**Hearing Date and Time: September 20, 2023 at 10:00 AM (ET)**
**Objection Deadline: September 13, 2023 at 4:00 PM (ET)**

Samuel A. Khalil, Esq.
Lauren C. Doyle, Esq.
Brian Kinney, Esq.
Edward R. Linden, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219

Michael J. Edelman, Esq.
William W. Thorsness, Esq. (admitted *pro hac vice*)
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone: (212) 407-7700
Facsimile:  (212) 407-7799

*Proposed Counsel to all Debtors and Debtors*
*in Possession other than the Participation*
*Debtors[1]*

*Proposed Counsel to the Participation Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Voyager Aviation Holdings, LLC *et al.*, | ) | Case No. 23-11177 (JPM) |
| | ) | |
| Debtors.[2] | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON DEBTORS' APPLICATION FOR ENTRY**
**OF ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION**
**OF FTI CONSULTING, INC., EFFECTIVE AS OF JULY 27, 2023, TO**
**PROVIDE CHIEF RESTRUCTURING OFFICER AND SUPPORTING**
**PERSONNEL TO THE DEBTORS AND (II) GRANTING RELATED RELIEF**

---

[1]  "Participation Debtors" means, collectively, Aetios Aviation Leasing 1 Limited, Aetios Aviation Leasing 2 Limited, Panamera Aviation Leasing XII Designated Activity Company, and Panamera Aviation Leasing XIII Designated Activity Company.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A);  Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652).  The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

**PLEASE TAKE NOTICE** that a hearing (the "<u>Hearing</u>") to consider the *Application for Entry of Order (I) Authorizing Employment and Retention of FTI Consulting, Inc. Effective as of July 27, 2023, to Provide Chief Restructuring Officer and Supporting Personnel to the Debtors and (II) Granting Related Relief* (the "<u>Application</u>") will be held at **10:00 a.m. (prevailing Eastern Time) on September 20, 2023**, and before the Honorable John P. Mastando III, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 501, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with this Court on the docket of *In re Voyager Aviation Holdings, LLC*, Case 23-11177 (JPM) by registered users of this Court's electronic filing system and in accordance with the General Order M-399 (which is available on this Court's website at http://www.nysb.uscourts.gov) by **September 13, 2023 at 4:00 p.m., prevailing Eastern Time**; and (d) be promptly served on the following parties: (i) the Chambers of the Honorable John P. Mastando III, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004; (ii) the Debtors, c/o Elisabeth McCarthy and Michael Sean Ewing (<u>lisa.mccarthy@vah.aero</u>; <u>sean.ewing@vah.aero</u>); (iii) Milbank LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Samuel A. Khalil, Esq., Lauren C. Doyle, Esq., Brian Kinney, Esq. and Edward R. Linden, Esq. (<u>skhalil@milbank.com</u>, <u>ldoyle@milbank.com</u>, <u>bkinney@milbank.com</u> and <u>elinden@milbank.com</u>)), counsel for the Debtors other than the Participation Debtors; (iv) Vedder Price, 1633 Broadway, 31st Floor, New

2

York, NY 10019 (Attn: Michael J. Edelman, Esq. and William W. Thorsness, Esq. (mjedelman@vedderprice.com and wthorsness@vedderprice.com), counsel for the Participation Debtors; and (v) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn: Annie Wells, Esq., Daniel Rudewicz, Esq., Brian Masumoto, Esq).

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings for subsequent hearings may be can be viewed and/or obtained by: (i) accessing the Courts' website at www.nysb.uscourts.gov, or (ii) on the website of the Debtors' proposed claims and noticing agent, Kurtzman Carson Consultants LLC ("KCC"), at www.kccllc.net/voyageraviation or by contacting KCC directly at (877) 634-7163 (for callers within the United States and Canada) or +1 (424) 236-7219 (for international callers).

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that you need not appear at the Hearing if you do not object to the relief requested in the Application.

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Application, or if you want the Court to consider your view on the Application, then you or your attorney must attend the Hearing.  If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Application and may enter

orders granting the relief requested in the Application with no further notice or opportunity to be

heard.

Dated: August 25, 2023
New York, New York

/s/ Lauren C. Doyle
Samuel A. Khalil, Esq.
Lauren C. Doyle, Esq.
Brian Kinney, Esq.
Edward R. Linden, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        skhalil@milbank.com
              ldoyle@milbank.com
              bkinney@milbank.com
              elinden@milbank.com

*Proposed Counsel to all Debtors and Debtors in
Possession other than the Participation Debtors*

/s/ Michael J. Edelman
Michael J. Edelman, Esq.
William W. Thorsness (admitted *pro hac vice*)
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone:    (212) 407-7700
Facsimile:    (212) 407-7799
Email:        mjedelman@vedderprice.com
              wthorsness@vedderprice.com

*Proposed Counsel to the Participation Debtors*

**Hearing Date and Time: September 20, 2023 at 10:00 AM (ET)**
**Objection Deadline: September 13, 2023 at 4:00 PM (ET)**

Samuel A. Khalil, Esq.
Lauren C. Doyle, Esq.
Brian Kinney, Esq.
Edward R. Linden, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Michael J. Edelman, Esq.
William W. Thorsness, Esq. (admitted *pro hac vice*)
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone: (212) 407-7700
Facsimile: (212) 407-7799

*Proposed Counsel to all Debtors and Debtors in Possession other than the Participation Debtors[1]*

*Proposed Counsel to the Participation Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Voyager Aviation Holdings, LLC *et al.*, | ) | Case No. 23-11177 (JPM) |
| | ) | |
| Debtors.[2] | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF**
**ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF**
**FTI CONSULTING, INC., EFFECTIVE AS OF JULY 27, 2023, TO**
**PROVIDE CHIEF RESTRUCTURING OFFICER AND SUPPORTING**
**PERSONNEL TO THE DEBTORS AND (II) GRANTING RELATED RELIEF**

---

[1]    "Participation Debtors" means, collectively, Aetios Aviation Leasing 1 Limited, Aetios Aviation Leasing 2 Limited, Panamera Aviation Leasing XII Designated Activity Company, and Panamera Aviation Leasing XIII Designated Activity Company.

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A);  Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652).  The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

By this application (the "Application"), the above captioned debtors and debtors in possession (the "Debtors") seek entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), authorizing them to retain and employ FTI Consulting, Inc. ("FTI"), effective as of the Petition Date (as defined herein), to provide a Chief Restructuring Officer (the "CRO") and certain supporting personnel (the "Supporting Personnel" and, together with the CRO, the "FTI Professionals") to the Debtors, and granting certain related relief.

In support of this Application, the Debtors submit the declaration of Robert A. Del Genio, a Senior Managing Director at FTI, annexed hereto as **Exhibit B** (the "Del Genio Declaration"). In further support of this Application, the Debtors respectfully state as follows:

## BACKGROUND

1.      On July 27, 2023 (the "Petition Date"), each Debtor commenced a case under chapter 11 of the Bankruptcy Code by filing a voluntary petition for relief in this Court (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these cases is set forth in the *Declaration of Robert A. Del Genio, Chief Restructuring Officer of Voyager Aviation Holdings, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day Declaration").

## RELIEF REQUESTED

3.      The Debtors request entry of the Proposed Order authorizing the employment and retention of FTI, effective as of the Petition Date, to provide Robert A. Del Genio to serve as the

Debtors' CRO and certain additional personnel to support the CRO and perform other management services in these Chapter 11 Cases, in accordance with the terms and conditions set forth in the engagement agreement, dated July 25, 2023, annexed hereto as **Exhibit C** (the "Engagement Letter").[3]

4.      The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

## RETENTION OF FTI

### A.  FTI's Qualifications

7.      The Debtors have determined, in the exercise of their business judgement, that due to the size and complexity of their business, as well as the other circumstances of the Chapter 11 Cases, employing an experienced restructuring manager will substantially enhance their efforts to maximize the value of their estates.  As described below, the FTI Professionals are well qualified to act on the Debtors' behalf.

8.      As described in the Del Genio Declaration, the FTI Professionals have a wealth of experience in providing financial advisory services in complex restructurings and reorganizations and enjoy an excellent reputation for services they have rendered in large and complex chapter 11

---

[3]    Capitalized terms used but not otherwise defined herein have the respective meanings ascribed to such terms in the Engagement Letter.

cases on behalf of debtors and creditors throughout the United States, including when acting as financial advisor and/or providing a chief restructuring officer to debtors in large chapter 11 cases such as, among others: *Altera Infrastructure L.P.*, Case No. 22-90130 (MI) (Bankr. S.D. Tex. 2022); *24 Hour Fitness Worldwide, Inc.*, Case No. 20-11558 (KBO) (Bankr. D. Del. 2020); *Avianca Holdings, S.A.*, Case No. 20-11133 (MG) (Bankr. S.D.N.Y. 2020); *Armstrong Energy, Inc.*, Case No. 17-47541-659 (Bankr. E.D. Mo. 2017); *American Apparel, LLC*, Case No. 16-12551 (BLS) (Bankr. D. Del. 2016); *AstroTurf, LLC*, Case No. 16-41504-PWB (Bankr. N.D. Ga. 2016); *Aéropostale, Inc.*, Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. 2016).

9.      FTI specializes in interim management, restructuring advisory services, turnaround consulting, operational due diligence, creditor advisory services, and performance improvement. FTI's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a company's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

10.      Mr. Del Genio has the requisite experience to serve as the CRO.  Mr. Del Genio has more than forty (40) years of experience in restructuring and mergers and acquisitions transactions.  He has advised companies, lenders, creditors, corporate boards, and equity sponsors across a diverse range of industries both domestically and internationally both in and out of court in a variety of complex restructuring engagements.  Mr. Del Genio's forty (40) years of restructuring experience includes liquidity review and cash forecasting, working capital management, chapter 11 planning and administration and assisting companies with "first day" and

other matters necessary to avoid any unnecessary disruption of their businesses and to protect value as companies transition into their roles as chapter 11 debtors in possession.

11.    Mr. Del Genio has acted as the financial advisor to multiple organizations, including TPC Group, Inc., GNC Holdings Inc., Catalina Marketing Corp., Frontier Communications Corp., OSG Group Holding, Inc., Altera Infrastructure, LP, ESSAR Steel, Algoma Steel Inc., Reichhold Holdings US, Inc., Milacron, Inc., Caraustar Industries, Inc., MicroAge, Inc., CST Industries, Dan River, Inc., Wheeling-Pittsburgh Steel Corp., Waypoint, US Internetworking, Factory Card Outlet, Malden Mills, and Metal Forming Technologies during their chapter 11 cases. He has served as the Strategic Planning Officer of RHI Entertainment, Inc. during its chapter 11 proceeding, the Chief Restructuring Officer of The Weinstein Company Holdings LLC during its chapter 11 proceedings, the Chief Restructuring Officer of CHC Group Ltd. during its chapter 11 proceedings, the Chief Restructuring Officer of PHI, Inc. during its chapter 11 proceedings, and the Co-Chief Restructuring Officer of F&W Media during its chapter 11 proceedings. Mr. Del Genio has also served as the Chief Strategic Officer of Production Resources Group, currently serves on the board of directors of Panavision, Inc. after having served as an interim Chief Executive Officer, and has previously served on the boards of Washington Group International, Inc., CHC Group Ltd., Lazare Kaplan International, Inc., and Buffets, Inc.

12.    Furthermore, as a result of the significant prepetition work performed on behalf of the Debtors, the FTI Professionals have acquired significant knowledge of the Debtors and their businesses and are intimately familiar with the Debtors' financial affairs and systems, capital structure, operations, and related matters. During their prepetition engagement, the FTI Professionals assisted the Debtors' management team with, among other things, analyzing the Debtors' obligations to vendors, suppliers and service providers, preparing for the Debtors'

chapter 11 filing and first day relief, developing and implementing strategies for communications with internal and external stakeholders, and preparing financial analysis and planning.[4]  Such experience and knowledge will be invaluable to the Debtors.

13.    Because of FTI's expertise in advising debtors and familiarity with the Debtors' business operations and capital structure, the Debtors submit that the retention of FTI and the FTI Professionals and the designation of Mr. Del Genio as their CRO on the terms and conditions set forth in the Engagement Letter is necessary and appropriate, is in the best interests of their estates, creditors, and other parties in interest, and should be granted.

B.  **Services to Be Provided**

14.    Pursuant to the Engagement Letter, FTI has provided and agreed to continue providing the following financial advisory and consulting services:[5]

(a)    Working with the Debtors' board to manage the Debtors' restructuring efforts on a daily basis;

(b)    Assisting the Debtors in preparing for and operating as debtors in possession;

(c)    If needed, providing testimony supporting the Debtors' petitions, as well as first day motions and applications;

(d)    If needed, providing testimony supporting the Debtors' plan of reorganization;

(e)    Assisting the Debtors in their efforts to transition aircraft to Azorra Explorer Holdings Limited ("Azorra"), as the purchaser under the Agreement for the Sale and Purchase of Certain Assets of Voyager (the sale contemplated thereby, the "Sale") during the novation period;

(f)    If needed, providing testimony supporting the Sale;

(g)    Assisting in the wind-down of the Debtors post-closing of the Sale in the US and Ireland as necessary;

---

[4]    FTI had a prior engagement agreement with the Debtors, dated as of January 20, 2021, but FTI currently operates under the terms of the Engagement Letter and will do so for the duration of the Chapter 11 Cases.

[5]    The summary of FTI's services and of the other Engagement Letter terms in the Application is for purposes of convenience only and is qualified in its entirety by reference to the Engagement Letter.  To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter control.

(h)     Assisting in the completion of KPMG's U.S. and Ireland audit and tax work;

(i)     Assisting in managing the transition support services;

(j)     Assisting the Debtors in preparation of the cash management reporting, statements of financial affairs and schedules of assets and liabilities, and monthly operating reports;

(k)     Assisting the Debtors with and participate in the initial debtor interview and the meeting of creditors under section 341 of the Bankruptcy Code;

(l)     Assisting the Debtors with their analysis of wind-down costs and procedures;

(m)     Assisting the Debtors in preparation of the liquidation analysis to be attached to the disclosure statement and, if needed, providing testimony supporting such disclosure statement;

(n)     Providing strategic communications advice and material development for internal and external communications in coordination with management;

(o)     Testifying or providing evidence at or in connection with any judicial or administrative proceeding; and

(p)     Providing such other services as mutually agreed upon by FTI and the Debtors.

15.     Consistent with the Office of the United States Trustee's (the "U.S. Trustee") protocol applicable to the retention of personnel to assist debtors under section 363 of the Bankruptcy Code (the "Jay Alix Protocol"), the FTI Personnel will not act as a financial advisor retained under section 327 of the Bankruptcy Code, a claims agent or claims administrator appointed pursuant to 28 U.S.C. § 156(c), or an investor or acquirer in the Chapter 11 Cases.

**C.  No Duplication of Services**

16.     The Debtors expect that the services of FTI will complement and not duplicate the services rendered by any other professionals retained by the Debtors.  As set forth in the Del Genio Declaration, FTI understands that the Debtors have retained and may retain additional professionals during the term of FTI's engagement and agrees to work cooperatively with such professionals to integrate all work conducted by such professionals.  FTI is providing distinct and

specific financial advising and consulting services, and such services are not expected to duplicate those to be provided by any other consultants, legal advisors, or investment bankers.

**D.  Disinterestedness of FTI**

17.      To the best of the Debtors' knowledge, information and belief, neither FTI nor any professional, employee, or independent contractor of FTI has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Del Genio Declaration.

18.      Although the Debtors are not seeking to retain FTI under section 327 of the Bankruptcy Code, FTI has performed the same conflict check it would perform if it were being retained under section 327.  The results of FTI's conflict check are set forth in the Del Genio Declaration, which discloses, among other things, any relationship that Mr. Del Genio, FTI, or any individual FTI Professional has with the Debtors, their creditors, or other parties in interest.  Based upon the Del Genio Declaration, the Debtors submit that FTI is a "disinterested person," as that term is defined in § 101(14) of the Bankruptcy Code.

19.      In addition, as set forth in the Del Genio Declaration, FTI has conducted a review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, FTI will supplement its disclosures to the Court.

**E.  Proposed Compensation**

20.      If the Court grants the relief requested herein, FTI will be employed in the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code.  Because FTI is not being retained as a professional under sections 327(a) and 328(a) of the Bankruptcy Code, FTI does not intend to apply to this Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, and orders of this Court relating to "professionals." Instead, the fees and expenses incurred by FTI in completion of the services it performs will be treated as administrative expenses of the Debtors' chapter 11 estates and paid by the Debtors in the ordinary course of business.

21.     The Debtors and FTI have agreed that FTI will be compensated for the services of the FTI Professionals at their standard hourly rates. At present, FTI's standard hourly rates are as follows:

| Billing Category | Hourly Billing Rate (USD) |
|---|---|
| Senior Managing Directors | $1,045 to $1,495 |
| Directors / Senior Directors / Managing Directors | $785 to $1,055 |
| Consultants / Senior Consultants | $435 to $750 |
| Administrative / Paraprofessionals | $175 to $325 |

22.     The Debtors understand that these hourly rates are subject to annual firm-wide adjustments in the ordinary course of FTI's business. The Debtors also understand that FTI's hourly rates and the rate structure proposed for the Chapter 11 Cases are consistent with the rates that FTI charges other comparable clients.

23.     To maintain transparency and to comply with the U.S. Trustee's J. Alix Protocol (referenced above), FTI will file reports of compensation earned, expenses incurred, and current personnel staffed on the Chapter 11 Cases on a monthly basis (each a "Staffing Report" and collectively, the "Staffing Reports") with the Court and provide notice of such filing to the U.S. Trustee and counsel to any official committee appointed in the Chapter 11 Cases (each a "Committee" and, with the U.S. Trustee, the "Notice Parties"). Such Staffing Reports will (a) summarize the time incurred and services provided to the Debtors, (b) identify by name and function the staff provided, and (c) itemize the expenses incurred. The first Staffing Report shall

cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

24.     Because FTI does not ordinarily maintain contemporaneous time records in one tenth hour (0.1) increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors respectfully request that:  (i) FTI be allowed to keep its time records in one-half (0.5) hour increments; (ii) FTI's professionals not be required to keep time records on a "project category" basis; and (iii) FTI not be required to provide or conform to any schedule of hourly rates (other than set forth above herein).  To the extent that FTI's timekeeping process as described herein deviates from what would otherwise be required, the Debtors respectfully request that this Court allow such deviations and waive any requirements to the contrary.

25.     The Staffing Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtor, the Debtor's undersigned counsel, and FTI within ten (10) days after the date each Staffing Report is filed and served (the "Objection Period").  The Debtor respectfully requests that they be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention.  In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtor shall deduct an amount equal to the amount objected to from the next payment to FTI until such objection is resolved, either consensually or by Court order.

**F.  Compensation Received by FTI from the Debtors**

26.     According to FTI's books and records, during the 90-day period prior to the Petition Date, the Debtors paid FTI $2,538,605 including a $200,000 retainer and expenses of $139 for professional services performed and expenses incurred.  In addition, prior to the Petition Date, consistent with the Engagement Agreement and FTI's customary practices, the Debtors provided

FTI with advance payments totaling $300,000.  As of the Petition Date, the Debtors did not owe

FTI any amounts for services rendered before the Petition Date.

27.     Pursuant to Bankruptcy Rule 2016(b), FTI has neither shared nor agreed to share

(a) any compensation it has received or may receive from the Debtors with another person, other

than with the directors and consultants associated with FTI as permitted under section 504(b)(1)

of the Bankruptcy Code, or (b) any compensation another person has received or may receive from

the Debtors.  Other than as set forth above, there is no proposed arrangement between the Debtors

and FTI with respect to compensation to be paid in the Chapter 11 Cases.

### G.  Indemnification Provisions

28.     As part of the overall compensation payable to FTI under the terms of the

Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions

(the "Indemnification Provisions").  As more fully set forth in the Engagement Letter, under the

Indemnification Provisions, the Debtors agreed to indemnify and hold harmless FTI and any of its

subsidiaries, affiliates, officers, directors, principals, shareholders, agents, independent contractors

and employees (collectively, including FTI, the "Indemnified Persons") from and against any and

all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys'

fees and expenses and costs of investigation) arising out of or relating to the Debtors' retention of

FTI, the execution and delivery of the Engagement Letter, the provision of the services thereunder

and other matters relating to or arising from the Engagement Letter, except to the extent that any

such claim, liability, obligation, damage, cost or expense shall have been determined by final non-

appealable order of a court of competent jurisdiction to have resulted from the gross negligence,

willful misconduct, bad faith, fraud, or violation of applicable law of the Indemnified Person(s) in

respect of whom such liability is asserted (an "Adverse Determination").  The Debtors have agreed

to pay damages and expenses, including reasonable documented legal fees and disbursements of

outside legal counsel.  FTI has agreed that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.  In addition, the Debtors have provided the CRO full coverage under applicable director and officer liability insurance policies.

## BASIS FOR RELIEF

29.     The Debtors submit that the retention of the FTI Professionals pursuant to sections 105 and 363 of the Bankruptcy Code is proper.  Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under applicable case law, if a debtor's proposed use of the estate property is based on reasonable business judgment, such use should be approved.  *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

30.     The Debtors have determined, in the exercise of their sound business judgement, that the size and complexity of their business requires them to employ a CRO and supporting personnel with the knowledge of the Debtors' industry and business, as well as experience with the chapter 11 process.  As set forth above, Mr. Del Genio has extensive experience as a senior officer and advisor for many troubled companies undertaking restructuring, and the Supporting Professionals are well qualified and equipped to assist the CRO in his duties.  The Debtors believe

that engaging Mr. Del Genio as the CRO, as well as the other FTI Professionals, will be in the best interests of all parties in interest in these Chapter 11 Cases.

31.    Additionally, section 105 of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), also provides this Court with the power to grant the relief requested herein.

32.    This Court has authorized retention of interim corporate officers and other temporary employees on numerous occasions. *See*, *e.g.*, *In re SVB Fin. Grp.*, Case No. 23-10367 (MG) (Bankr. S.D.N.Y. June 2, 2023) [Docket No. 304]; *In re Urban Commons 2 West LLC*, Case No. 22-11509 (PB) (Bankr. S.D.N.Y. Dec. 8, 2022) [Docket No. 60]; *In re GTT Commc'ns, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Dec. 14, 2021) [Docket No. 212]; *In re Greenshill Cap. Inc.*, Case No. 21-10561 (MEW) [Docket No. 163] (Bankr. S.D.N.Y. June 29, 2021); *In re Centric Brands Inc.*, Case No. 20-22637 (SHL) [Docket No. 334] (Bankr. S.D.N.Y. Jul. 2, 2020); *In re Dean & Deluca N.Y.*, Inc., Case No 20-10916 (MEW) [Docket No. 76] (Bankr. S.D.N.Y. May 13, 2020); *In re The McClatchy Co.*, Case No. 20-10418 (MEW) [Docket No. 241] (Bankr. S.D.N.Y. Mar. 27, 2020); *In re Relativity Media, LLC*, Case No. 18-11358 (MEW) [Docket No. 306] (Bankr. S.D.N.Y. July 6, 2018); *In re Avaya Inc.*, Case No. 17-10089 (SMB) [Docket No. 284] (Bankr. S.D.N.Y. Mar. 20, 2017); *In re SunEdison, Inc.*, No. 16-10992 (SMB) [Docket No. 512] (Bankr. S.D.N.Y. Jun. 8, 2016); *In re Fairway Grp. Holdings*, Case No. 16-11241 (MEW) [Docket No. 140] (Bankr. S.D.N.Y. June 3, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) [Docket No. 145] (Bankr. S.D.N.Y. Aug. 10, 2015).

33.    Additionally, the Debtors request that FTI's retention, and Mr. Del Genio's designation as CRO, be made effective as of the Petition Date, to allow FTI to be compensated for

the work performed for the Debtors before the Court's consideration and approval of this Application.  The Debtors submit that, under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if FTI is not immediately retained, retroactive approval to the Petition Date is warranted.

34.     Based upon the foregoing, the Debtors submit that the retention of FTI and the designation of Mr. Del Genio as their CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate and in the best interest of the Debtors' estates, creditors and other parties in interest and should be granted.

## NO PREVIOUS REQUEST

35.     No prior application for the relief requested herein has been made by the Debtors to this or any other court.

## NOTICE

36.     The Debtors will provide notice of this Application to (a) the U.S. Trustee for Region 2; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Required Consenting Noteholders, Clifford Chance US LLP; (d) counsel to the Aircraft Facility Lenders; (e) counsel to the Indenture Trustee of the Secured Notes; (f) counsel to the Purchaser, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Pillsbury Winthrop Shaw Pittman LLP; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; (i) the Office of Foreign Assets Control of the United States Department of Treasury; (j) the United States Attorney's Office for the Southern District of New York; (k) the office of the attorneys general for the states in which the Debtors operate; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The

Debtors respectfully submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request entry of an order substantially in the form annexed as **<u>Exhibit A</u>** hereto: (i) authorizing the employment and retention of FTI to provide a CRO and Supporting Personnel, effective as of the Petition Date in accordance with the terms of the Engagement Letter, and (ii) granting such further relief as is necessary or appropriate.

Dated:  August 25, 2023
      New York, New York

                */s/ Elisabeth McCarthy*
                Elisabeth McCarthy
                General Counsel and/or Authorized Representative
                Voyager Aviation Holdings, LLC

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
In re:                                  )    Chapter 11
                                        )
Voyager Aviation Holdings, LLC *et al.*, )    Case No. 23-11177 (JPM)
                                        )
                    Debtors.[1]         )    (Jointly Administered)
                                        )
_____ )

### ORDER AUTHORIZING EMPLOYMENT AND
### RETENTION OF FTI CONSULTING, INC.
### (I) AUTHORIZING EMPLOYMENT AND RETENTION OF FTI
### CONSULTING, INC., EFFECTIVE AS OF JULY 27, 2023, TO
### PROVIDE CHIEF RESTRUCTURING OFFICER AND SUPPORTING
### PERSONNEL TO THE DEBTORS AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (the "Debtors") for entry of an order, pursuant to sections 105(a) and 363 of the

Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rules 2014-1 and

2016-1, authorizing the Debtors to employ and retain FTI to provide the Debtors with a CRO and

Supporting Personnel, effective as of the Petition Date; and upon the Del Genio Declaration; and

the Court having reviewed the Application and the Del Genio Declaration and having heard the

statements of counsel regarding the relief requested in the Application at a hearing before the

Court, if any (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number,
are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A);
Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC
(9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM
Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation
Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI
Limited (N/A);   Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation
Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation
Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and
Voyager Finance Co. (9652).  The service address for each of the Debtors in these cases is 301 Tresser Boulevard,
Suite 602, Stamford, CT 06901.

[2]    Capitalized terms used but not otherwise defined herein have the respective meanings ascribed to such terms in
the Application or the First Day Declaration, as applicable.

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); (c) venue is proper before the Court pursuant to 28 U.S.C. § 1408; and (d) due and proper notice of the Application and the Hearing was sufficient under the circumstances and the Court having determined that the legal and factual bases set forth in the Application establish good cause for the relief granted herein; and the relief requested in the Application being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and any objections to the relief requested in the Application having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth herein.

2.      In accordance with sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to (a) employ and retain FTI and (b) designate Mr. Del Genio as their CRO, in each instance, effective as of the Petition Date and in accordance with the terms and conditions set forth in the Application and in the Engagement Letter, except as limited or modified herein.

3.      The terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved, subject to the following terms:

      a.      FTI and its affiliates shall not act in any other capacity (for example, and without limitation, as financial advisor, claims agent/claims administrator or investor/acquirer) in connection with the Chapter 11 Cases;

      b.      In the event the Debtors seek to have FTI personnel assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of FTI Professionals, (ii) adding new executive

officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

c.  No principal, employee, or independent contractor of FTI and its affiliates shall serve as a director of any Debtor during the pendency of the Chapter 11 Cases.

d.  FTI shall file with the Court, on notice to the U.S. Trustee and any official committees appointed in these cases (together, the "Notice Parties"), a report of staffing on the engagement for the previous month (the "Staffing Report"). Each Staffing Report shall contain a summary chart that describes the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in half-hourly increments. Parties in interest shall have ten (10) days after the Staffing Report is filed with the Court to object.  In the event an objection is raised and not consensually resolved, the portion of the Staffing Report objected to shall be subject to review by this Court.  No payments shall be made to FTI until the objection period has passed, and in the event an objection is raised, no payment shall be made to FTI on account of the portion of the Staffing Report objected to until such objection is resolved.

e.  Subject to the requirements of paragraph (d) above, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all undisputed amounts invoiced by FTI for the fees and expenses incurred in connection with FTI's retention.

f.  Any success fees, transaction fees, completion fees, or other back-end fees shall be approved by this Court at the conclusion of the Chapter 11 Cases on a reasonableness standard and are not being pre-approved by entry of this Order.  No success fee, transaction fee, completion fee, or back-end fee shall be sought upon conversion of any Chapter 11 Case, dismissal of any Chapter 11 Case for cause, or appointment of a trustee in any Chapter 11 Case.

g.  The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' directors and officers insurance policy.

h.  For a period of three (3) years after the conclusion of the engagement, neither FTI nor any of its affiliates shall make any investments in the Debtors or the reorganized Debtors.

      i.     FTI shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

4.     To the extent the Application, the Del Genio Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

5.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

6.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this order.

New York, New York
Dated: _____, 2023

_____
THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

4

## **Exhibit B**

**Declaration of Robert A. Del Genio**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Voyager Aviation Holdings, LLC *et al.*, | ) | Case No. 23-11177 (JPM) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF ROBERT A.**
**DEL GENIO IN SUPPORT OF THE**
**DEBTORS' APPLICATION FOR ENTRY OF ORDER**
**(I) AUTHORIZING EMPLOYMENT AND RETENTION OF**
**FTI CONSULTING, INC. TO PROVIDE CHIEF RESTRUCTURING**
**OFFICER AND SUPPORTING PERSONNEL TO THE DEBTORS,**
**EFFECTIVE AS OF JULY 27, 2023 AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, Robert A. Del Genio declares as follows:

1.    Subject to the approval of this Court, I am the Chief Restructuring Officer of Voyager Aviation Holdings, LLC ("VAH" and, together with the other above-captioned debtors in possession, the "Debtors") and have served in such capacity since July 25, 2023. I previously served in the role of interim Chief Strategic Officer of VAH from June 3, 2022, to July 24, 2023, and have been working with the Debtors on the financial advisory side consistently from January 2021 through today.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A);   Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652).  The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

2.      I am a Senior Managing Director and the co-leader of the New York Metro Region for Corporate Finance and Restructuring at FTI Consulting, Inc. ("FTI"), which maintains offices at 1166 Avenue of Americas, 15th Floor, New York, New York 10036, among other locations.

3.      In submit this declaration (the "Declaration") in support of the Debtors' application (the "Application")[2] for authority to employ and retain FTI to provide a CRO and supporting staff to the Debtors, effective as of the Petition Date.

4.      Unless otherwise stated in the Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. Certain of the disclosures set forth herein relate to matters not within my personal knowledge but rather within the knowledge of other employees at FTI and are based on the information provided to me by them.

## FTI'S QUALIFICATIONS

5.      FTI has a wealth of experience in providing interim management services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors throughout the United States, including debtors with global operations.  FTI specializes in interim management, restructuring advisory services, turnaround consulting, operational due diligence, creditor advisory services, and performance improvement.  FTI's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans, and related assessments of a company's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

---

[2]    Capitalized terms used but not otherwise defined herein have the respective meanings ascribed to such terms in the Application.

6.      FTI possesses extensive knowledge and expertise in the areas of bankruptcy and restructuring and is well qualified to provide a CRO and supporting personnel to debtor in possession.  FTI employs seasoned professionals with C-level and relevant experience to assist distressed companies with financial and operational challenges, and FTI regularly assists large and complex businesses similar to the Debtors.  Moreover, I have more than 40 years of experience in restructuring and mergers and acquisitions.

7.      I have advised companies, lenders, creditors, corporate boards, and equity sponsors across a diverse range of industries both domestically and internationally both in and outside of chapter 11 in a variety of complex restructuring engagements.  I acted as the financial advisor to TPC Group, Inc., GNC Holdings Inc., Catalina Marketing Corp., Frontier Communications Corp., OSG Group Holding, Inc., Altera Infrastructure, LP, ESSAR Steel, Algoma Steel Inc., Reichhold Holdings US, Inc., Milacron, Inc., Caraustar Industries, Inc., MicroAge, Inc., CST Industries, Dan River, Inc., Wheeling-Pittsburgh Steel Corp., Waypoint, US Internetworking, Factory Card Outlet, Malden Mills, and Metal Forming Technologies during their chapter 11 cases.  I also served as the Strategic Planning Officer of RHI Entertainment, Inc. during its chapter 11 proceeding, the Chief Restructuring Officer of The Weinstein Company Holdings LLC during its chapter 11 proceedings, the Chief Restructuring Officer of CHC Group Ltd. during its chapter 11 proceedings, the Chief Restructuring Officer of PHI, Inc. during its chapter 11 proceedings, and the Co-Chief Restructuring Officer of F&W Media during its chapter 11 proceedings.  I served as the Chief Strategic Officer of Production Resources Group, currently serve on the board of directors of Panavision, Inc. after having served as an interim Chief Executive Officer, and have previously served on the boards of Washington Group International, Inc., CHC Group Ltd., Lazare Kaplan International, Inc., and Buffets, Inc.  My 40 years of restructuring experience includes liquidity

review and cash forecasting, working capital management, chapter 11 planning and administration and assisting companies with "first day" and other matters necessary to avoid any unnecessary disruption of their businesses and to protect value as companies transition into their roles as chapter 11 debtors in possession.[3]

8.      I believe FTI is well positioned to deal effectively and efficiently with matters that may arise in the Chapter 11 Cases.

## **SCOPE OF SERVICES**

9.      I will provide the ordinary course duties of a CRO.  In addition, the Supporting Personnel and I are currently (or anticipate) providing the following services to the Debtors:

(a)   Working with the Debtors' board to manage the Debtors' restructuring efforts on a daily basis;

(b)   Assisting the Debtors in preparing for and operating as debtors in possession;

(c)   If needed, providing testimony supporting the Debtors' petitions, as well as first day motions and applications;

(d)   If needed, providing testimony supporting the Debtors' plan of reorganization;

(e)   Assisting the Debtors in their efforts to transition aircraft to Azorra Explorer Holdings Limited ("Azorra"), as the purchaser under the Agreement for the Sale and Purchase of Certain Assets of Voyager (the sale contemplated thereby, the "Sale") during the novation period;

(f)   If needed, providing testimony supporting the Sale;

(g)   Assisting in the wind-down of the Debtors post-closing of the Sale in the US and Ireland as necessary;

(h)   Assisting in the completion of KPMG's U.S. and Ireland audit and tax work;

(i)   Assisting in managing the transition support services;

---

[3]   Further information on my professional background is available on FTI's website at: http://www.fticonsulting.com/experts/robert-del-genio.

(j)     Assisting the Debtors in preparation of the cash management reporting, statements of financial affairs and schedules of assets and liabilities, and monthly operating reports;

(k)     Assisting the Debtors with and participate in the initial debtor interview and the meeting of creditors under section 341 of the Bankruptcy Code;

(l)     Assisting the Debtors with their analysis of wind-down costs and procedures;

(m)     Assisting the Debtors in preparation of the liquidation analysis to be attached to the disclosure statement and, if needed, providing testimony supporting such disclosure statement;

(n)     Providing strategic communications advice and material development for internal and external communications in coordination with management;

(o)     Testifying or providing evidence at or in connection with any judicial or administrative proceeding; and

(p)     Providing such other services as mutually agreed upon by FTI and the Debtors.

## PROFESSIONAL COMPENSATION

10.     FTI intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Chapter 11 Cases in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the U.S. Trustee Guidelines, and any orders entered in the Chapter 11 Cases with respect to professional compensation for services rendered and reimbursement for charges and disbursements incurred. FTI will seek compensation for the services of each FTI Professional acting on behalf of the Debtors in the Chapter 11 Cases at their standard rates.

11.     FTI will accept as compensation for its services such amounts as may be allowed by the Court on the basis of the time spent, the rates charged, the necessity of the services rendered, the reasonableness of the time within which these services were performed in relation to the results achieved, and the complexity, importance, and nature of the issues or tasks addressed.

12.    If its retention is approved, FTI will be compensated at its standard hourly rates, which are based on each professional's level of experience.  At present, the standard hourly rates charged by FTI are as follows:

| Billing Category | Hourly Billing Rate (USD) |
|---|---|
| Senior Managing Directors | $1,045 to $1,495 |
| Directors / Senior Directors / Managing Directors | $785 to $1,055 |
| Consultants / Senior Consultants | $435 to $750 |
| Administrative / Paraprofessionals | $175 to $325 |

13.    These hourly rates are subject to annual and customary firm-wide adjustments in the ordinary course of FTI's business.  The hourly rates and corresponding rate structure proposed are consistent with the rates that FTI charges other comparable clients.  FTI does not typically maintain contemporaneous time records in one-tenth hour increments.

14.    In addition to the fees outlined above, FTI will seek reimbursement for reasonable direct expenses incurred on the Debtors' behalf during this engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

**Compensation Received by FTI from the Debtors**

15.    According to FTI's books and records, during the 90-day period prior to the Petition Date, the Debtors paid FTI $2,538,605 including a $200,000 retainer and expenses of $139 for professional services performed and expenses incurred.  In addition, prior to the Petition Date, consistent with the Engagement Agreement and FTI's customary practices, the Debtors provided

FTI with advance payments totaling $300,000.  As of the Petition Date, the Debtors did not owe

FTI any amounts for services rendered before the Petition Date.

16.     Other than as set forth above, there is no proposed arrangement between the

Debtors and FTI for compensation to be paid in the Chapter 11 Cases.[4]  FTI has no agreement with

any other entity to share any compensation received, nor will any be made, except as permitted

under section 504(b)(1) of the Bankruptcy Code.

### DISINTERESTEDNESS OF FTI

17.     I acknowledge and respectfully represent that the elements of section 327 of the

Bankruptcy Code and Bankruptcy Rule 2014 are not applicable in connection with FTI's and my

employment, which is being made under section 363 of the Bankruptcy Code.  Nevertheless, in

connection with the proposed employment and retention of FTI by the Debtors, FTI conducted a

review of its contacts with the Debtors, its affiliates and certain entities holding large claims against

or interests in the Debtors that were made reasonably known to FTI.  A listing of the parties

reviewed is reflected on **Schedule 1** to this Declaration.  FTI's review, completed under my

supervision, consisted of a query of the Schedule 1 parties within an internal computer database[5]

containing names of individuals and entities that are present or recent former clients of FTI.  A

summary of such relationships that FTI identified during this process is set forth on **Schedule 2**[6]

to this Declaration.

---

[4]     FTI has a prior engagement agreement with the Debtors, dated as of January 20, 2021, but FTI operates under, and will seek compensation only under, the terms of the Engagement Letter for the duration of the Chapter 11 Cases.

[5]     For the avoidance of doubt, FTI's computer database covers FTI Consulting, Inc. and its wholly-owned subsidiaries globally.

[6]     The inclusion of any party in **Schedules 1 and 2** is solely to illustrate FTI's search process and is not an admission that any such party has a claim against or legal relationship to the Debtors of the nature described in the schedules.

18.    Based on the results of its review, FTI does not have a relationship with any of the parties on **Schedule 1** in matters related to the Debtors or these chapter 11 cases.  FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' chapter 11 cases for the various entities shown on **Schedule 2**.  FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, technology, strategic communications, and economic consulting services. To the best of my knowledge and except as otherwise disclosed herein, no services have been provided to these parties in interest that involve their rights in these chapter 11 cases, nor does FTI's involvement in these cases compromise its ability to continue such consulting services.

19.    In addition to the disclosures set forth on **Schedule 2**, FTI discloses the following:

- In addition to my pre-petition service as Chief Strategic Officer of VAH, Cindy Kielkucki has served as VAH's Interim Chief Accounting Officer since June 1, 2022, pursuant to the Second Addendum to Financial Advisory and Consulting Engagement Letter.

- A compensation advisor at FTI has served on the board of directors of a charitable service in an unpaid position with Hooman Yazhari, Executive Chairman of the Debtors' Board of Managers. This FTI Professional is not a member of the engagement team providing services to the Debtors.

- From January 2022 through June 2022, FTI's strategic communications segment was engaged by VAH to provide communications and press release support. FTI is not owed any amounts in connection with this engagement.

20.    As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and

8

law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past,

may currently, and will likely in the future be working with or against other professionals involved

in these chapter 11 cases in matters unrelated to the Debtors and these cases. Based on our current

knowledge of the professionals involved, and to the best of my knowledge, none of these

relationships create interests adverse to the Debtors in matters upon which FTI is to be employed

and none are in connection with the Debtors' chapter 11 cases.

21.     Additionally, FTI is not a creditor of the Debtors within the meaning of Section

101(10) of the Bankruptcy Code.  Further, neither I nor any other FTI Professional serving the

Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of

the Debtors' stock.

22.     It is FTI's policy and intent to update and expand its ongoing relationship search

for additional parties in interest in an expedient manner. If any new material relevant facts or

relationships are discovered or arise, FTI will file a supplemental declaration.


*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: August 25, 2023

/s/ Robert A. Del Genio
Robert A. Del Genio
Senior Managing Director, FTI Consulting, Inc.

## Schedule 1

## POTENTIAL PARTIES IN INTEREST SEARCHED[1]

### Debtors

A330 MSN 1432 Limited

A330 MSN 1579 Limited

Aetios Aviation Leasing 1 Limited

Aetios Aviation Leasing 2 Limited

Cayenne Aviation LLC

Cayenne Aviation MSN 1123 Limited

Cayenne Aviation MSN 1135 Limited

DPM Investment LLC

Intrepid Aviation Leasing, LLC

N116NT Trust

Panamera Aviation Leasing IV Limited

Panamera Aviation Leasing VI Limited

Panamera Aviation Leasing XI Limited

Panamera Aviation Leasing XII Designated Activity Company

Panamera Aviation Leasing XIII Designated Activity Company

Voyager Aircraft Leasing, LLC

Voyager Aviation Aircraft Leasing, LLC

Voyager Aviation Holdings, LLC

Voyager Aviation Management Ireland Designated Activity Company

Voyager Finance Co.

### Non-Debtor Affiliates, Including Company Managed Entities

10137768 Trust

10137772 Trust

10137773 Trust

10137788 Trust

10137789 Trust

10137790 Trust

10137791 Trust

10137792 Trust

10137761 Trust

10137764 Trust

A330 MSN 1491 Limited

A330 MSN 1542 Limited

A330 MSN 1552 Limited

A330 MSN 1602 Limited

A330 PDP-1 Limited

A330 PDP-4 Limited

A330 PDP-2 Limited

Aircraft MSN 41520 Singapore Pte. Limited

Intrepid Aviation Asia Pte. Ltd.

Intrepid Aviation Luxembourg S.à r.l

Macan Aviation 2 Limited

N115NT Trust

Pajun Aviation Leasing 1 Limited

Pajun Aviation Leasing 2 Limited

Panamera Aviation Leasing Limited

Panamera Aviation Leasing VII Limited

Panamera Aviation Leasing X Limited

VAH Leasing 1 LLC

VAH Leasing 2 LLC

VAH Leasing LLC

VAH Warehouse Holdings Limited

---

[1]    The inclusion of a name or party on this list is not an admission that such party is, in fact, a member of the category identified by its above referenced header or that it is a party in interest in the Chapter 11 Cases.

VAMI Leasing 1 Designated Activity Company

VAMI Leasing 2 Designated Activity Company

VAMI Leasing 3 Designated Activity Company

VAMI Leasing 4 Designated Activity

VAMI Leasing Designated Activity Company

VAMI Warehouse Holdings Limited

Voyager Leasing Ireland Limited. (fka A330 MSN 1483 Ltd.)

## Common and Preferred Equity Holders

Bakery and Confectionery Union and Industry International Pension Fund

BlueBay Canadian Institutional Global High Yield Bond Fund

Bluebay Global High Yield Bond Fund

BlueBay Global High Yield ESG Bond Fund

BlueBay Inv Funds ICAV - BlueBay Leveraged Finance Total Return Fund

BMO Global Strategic Bond Fund

Bridge Builder Trust: Bridge Builder Core Plus Bond Fund

Citadel Securities LLC

Continental Automotive, Inc. Master Trust

Desjardins Global Tactical Bond Fund

Destra International & Event-Driven Credit Fund

Dorchester Capital Secondaries Offshore Master V, L.P.

Dorchester Capital Secondaries V, L.P.

Dorintal Reinsurance Limited

FMAP SOC Limited

Goldman Sachs Multi-Manager Non-Core Fixed Income Fund

Greywolf Distressed Opportunities Master Fund, LP

Greywolf Distressed Opportunities Master QPA Fund, LP

MacKay Shields High Yield ETF

IBM 401(k) Plus Plan Trust

IBM Personal Pension Plan Trust

Jefferies LLC

JNL/PIMCO Income Fund

Kaiser Permanente Group Trust

Kapitalforeningen MP Invest - High Yield Obligationer III

LGT Capital Invest (SC3) Limited

Northern Funds High Yield Fixed Income Fund

Northern Trust Collective High Yield Fund - Non-Lending

Northern Trust Investment Funds Plc

Northern Trust Investments, Inc.

Nublo Holding, S.A.

PCM Fund, Inc.

PIMCO Bermuda Trust II: PIMCO Bermuda Income Fund (M)

PIMCO Corporate & Income Opportunity Fund

PIMCO Corporate & Income Strategy Fund

PIMCO Dynamic Income Fund

PIMCO Dynamic Income Opportunities Fund

PIMCO ETF Trust PIMCO 0-5 Year High Yield Corporate Bond Index Exchange-Traded Fund

PIMCO ETFs plc - PIMCO US Short-Term High Yield Corporate Bond Index UCITS ETF

PIMCO Flexible Credit Income Fund

2

PIMCO Funds Ireland plc - PIMCO High Yield World 1 Fund

PIMCO Funds: Global Investors Series plc - Income Fund

PIMCO Funds: Global Investors Series plc - Strategic Income Fund

PIMCO Funds: Global Investors Series plc - US High Yield Bond Fund

PIMCO Funds PIMCO Income Fund

PIMCO Funds Private Account Portfolio Series PIMCO High Yield and Short-Term Investments Portfolio

PIMCO Global StocksPLUS & Income Fund

PIMCO High Income Fund

PIMCO High Yield and Short-Term Investments Portfolio

PIMCO Income Strategy Fund

PIMCO Income Strategy Fund II

PIMCO Low Duration Income Fund

PIMCO Monthly Income Fund (Canada)

PIMCO Tactical Income Fund

Purpose Investments Inc.

RBC Bluebay Global High Yield Bond Fund

RBC Funds for BlueBay Global Monthly Income Bond Fund

Silver Rock Opportunistic Credit Fund LP

Silver Rock Opportunities Fund I LP

Spring Creek Capital, LLC

SRF Plan Assets Opportunistic Credit Fund LP

Texas Children's Hospital Foundation

The Curators of the University of Missouri

Thyssen Global Investments Corp.

Trane Technologies Collective Trust

Wellwater LLC

## Beneficial or Equity Holders of Controlled/Managed Entities

Intertrust Nominees (Ireland) Limited

Intertrust SPV (Cayman) Limited

Orpheus Shareholder Limited

Walkers AV8 Shareholding Services Limited

Walkers SPV Limited

## Current Directors and Officers of Debtors and Non-Debtor Affiliates

Aine Neylon

Alan Alperin

Aoife Conneely

David Greene

Denis Echtchenko (Board Observer)

Ellen Janet Christian

Elisabeth McCarthy

Evgenia Jane Reys

Gaëtan Dumont

Hamish Alexander Christie

Hooman Yazhari

Intertrust Group

Kareem Robinson

Lim Bee Eng

Lorna Carroll

Marjorie L. Bowen

Matsack Trust Limited

Michael Sean Ewing

Michael Smith

Paula Shanahan

Pivotal Corporate Secretaries Limited

Roeland Cornelis de Graaf

Ronan O'Neill

Rosemarie Carroll

Steven Varner

Tavares Da Silva Rodrigues

Tavares Da Silva Luis Fernando

The Square Finance S.à.r.l.

Timothy Horan (Board Observer)

Tracy-Ann Lamont

Vistra Alternative Investments (Ireland) Ltd


### **Former Directors and Officers of the Debtors and Non-Debtor Affiliates**

Aideen Mary Tivnan

Andrew Jones

Bill Finn

Bronagh Hardiman

Carl Baker

Cian Leahy

Craig Huff

Dan Barlin

Deborah O'Kane

Eimir McGrath

Eoin Ryan

Eric Hoffman

Evert Brunekreef

Fergus O'Donnell

Franklin Pray

Gennie Bigord

Gregg Zeitlin

Karel Andrew Wouters

Katherine Kavaler

Mark Lapidus

Michael Lungariello

Olaf Sachau

Pamela Hendry

Pat O'Brien

Shengjie Xu

Stuart Kennedy

Viktor Schuh

Vincent Cebula

WNL Limited

Yvonne McWeeney


### **Secured Noteholders and Indenture Trustee**

Bakery and Confectionery Union and Industry International Pension Fund

BlueBay Canadian Institutional Global High Yield Bond Fund

Bluebay Global High Yield Bond Fund

BlueBay Global High Yield ESG Bond Fund

BlueBay Global Monthly Income Bond Fund

BlueBay Inv Funds ICAV - BlueBay Leveraged Finance Total Return Fund

BMO Global Strategic Bond Fund

Bridge Builder Trust: Bridge Builder Core Plus Bond Fund

Citadel Securities LLC

Continental Automotive, Inc. Master Trust

Curators of the University of Missouri

Desjardins Global Tactical Bond Fund

Destra International & Event-Driven Credit Fund

Dorchester Capital Secondaries Offshore Master V, LP

4

Dorchester Capital Secondaries V, LP

Dorintal Reinsurance Limited

FMAP SOC LIMITED

Goldman Sachs Multi-Manager Non-Core Fixed Income Fund

Greywolf Distressed Opportunities Master Fund, LP

Greywolf Distressed Opportunities Master QPA Fund, LP

MacKay Shields High Yield ETF

IBM 401(k) Plus Plan Trust

IBM Personal Pension Plan Trust

JNL/PIMCO Income Fund

Kaiser Permanente Group Trust

Kapitalforeningen MP Invest - High Yield Obligationer III

LGT Capital Invest (SC3) Limited

Microsoft Corporation

Northern High Yield Fixed Income Fund

Northern Trust Collective High Yield Fund - Non-Lending

Northern Trust Investment Funds Plc

Northern Trust Investments, Inc.

Nublo Holding, S.A.

PCM Fund, Inc.

Pension Benefit Guaranty Corporation

PIMCO Bermuda Trust II PIMCO Bermuda Income Fund (M)

PIMCO Corporate & Income Opportunity Fund

PIMCO Corporate & Income Strategy Fund

PIMCO Dynamic Credit and Mortgage Income Fund

PIMCO Dynamic Income Fund

PIMCO Dynamic Income Opportunities Fund

PIMCO ETF Trust PIMCO 0-5 Year High Yield Corporate Bond Index Exchange-Traded Fund

PIMCO ETFs plc - PIMCO US Short-Term High Yield Corporate Bond Index UCITS ETF

PIMCO Flexible Credit Income Fund

PIMCO Funds - Private Account Portfolio Series

PIMCO Funds Ireland plc - PIMCO High Yield World 1 Fund

PIMCO Funds: Global Investors Series plc - Income Fund

PIMCO Funds: Global Investors Series plc - Strategic Income Fund

PIMCO Funds: Global Investors Series plc - US High Yield Bond Fund

PIMCO Funds PIMCO Income Fund

PIMCO Global StocksPLUS & Income Fund

PIMCO High Income Fund

PIMCO High Yield and Short-Term Investments Portfolio

PIMCO Income Opportunity Fund

PIMCO Income Strategy Fund

PIMCO Income Strategy Fund II

PIMCO Low Duration Income Fund

PIMCO Monthly Income Fund (Canada)

PIMCO Tactical Income Fund

Pine Shelf LLC

Purpose Investments Inc.

RBC BlueBay Global High Yield Bond Fund

Silver Rock Opportunistic Credit Fund LP

Silver Rock Opportunities Fund I LP

Spring Creek Capital, LLC

SRF Plan Assets Opportunistic Credit Fund LP

Texas Children's Hospital Foundation

Thyssen Global Investments Corp.

Trane Technologies Collective Trust

Wellwater LLC

Wilmington Trust, National Association

## Lender Administrative Agents

| | |
|---|---|
| Bank of Utah | Norddeutsche Landesbank Girozentrale |
| Citibank, N.A. | UMB Bank, N.A. |
| ING Capital LLC | Voyager Aviation Holdings, LLC |
| KEB Hana Bank, London Branch | Wells Fargo Trust Company, National Association fka Wells Fargo Northwest, National Association |

## Aircraft Financing Secured Parties

| | |
|---|---|
| Airbus Bank GmbH | Landesbank Hessen-Thüringen Girozentrale ("Helaba") |
| Allianz Global Corporate & Specialty SE, U.K. Branch | Marsh LLC, Aviation & Aerospace |
| Apple Bank for Savings | Marsh USA, Inc. |
| AV AirFinance Limited | Mitsubishi UFJ Financial Group, Inc. |
| ATLAS SP Partners, L.P. | Morgan Stanley Bank, N.A. |
| AXIS Specialty Europe SE, London Branch | NongHyup Bank Co., Ltd. |
| Cardinal Air 2021-2 Limited | PCAM Issuance II S.A |
| Credit Suisse Securities (USA) LLC | PR Aircraft Finance S.A. |
| Credit Suisse AG, Cayman Islands Branch | Rolls Royce |
| CTBC Bank Co. Ltd. | Sompo International |
| Deutsche Bank AG/New York NY | Shinhan Bank, New York Branch |
| DVB Bank SE | SI Insurance (Europe), SA |
| Endurance Worldwide Insurance Limited | Sumitomo Mitsui Trust Bank, Limited |
| Ensign Peak Advisors, Inc. | Thomas Creek Capital Corporation |
| Far Eastern International Bank Ltd. | UMB Bank, National Association |
| Fidelis Insurance Group | Wells Fargo Trust Company, National Association fka Wells Fargo Northwest, National Association |
| Fidelis Underwriting Limited | |
| IBJ Leasing Co., Ltd. | Woori Bank Co., Ltd., Bahrain Branch |
| Investec Bank plc. | |

## Aircraft Lessees

| | |
|---|---|
| Air France | Breeze Airways |
| AirBridge Cargo Airlines, LLC | Cebu Air, Inc |
| Alitalia Società Aerea Italiana S.p.A. | Chrystal Jet Limited |

6

Italia Trasporto Aereo S.P.A. (ITA Airways)

Philippine Airlines, Inc.

Sichuan Airlines Co. Ltd.

Sichuan Airlines No. 4 Leasing (Tianjin) Co., Ltd.

Sichuan Airlines No. 5 Leasing (Tianjin) Co. Ltd.

Societe Air France

Turkish Airlines Inc. (Turk Hava Yollari A.O.)

Volga-Dnepr Logistics B.V.

### Parties to Material Unexpired Leases with Debtors

Hewlett-Packard International Bank DAC

IPUT PLC

Marlin Capital Solutions

One Stamford Plaza Owner, LLC

RFR Realty LLC

Savills Commercial Ireland Ltd.

Stacked Limited

Three Stamford Plaza Owner LLC

### Banks

Bank of America Corporation

BNP Paribas

CitiBank, N.A.

DBS Bank Ltd

J.P. Morgan Chase & Co.

Jefferies LLC

Barclays Bank Ireland PLC

KEB Hana Bank, London Branch

OCBC Bank Ltd.

Wells Fargo Advisors

Wells Fargo Bank, National Association

### Material Contract Counterparties

AerData B.V.

Amedeo Capital Limited

Airbus S.A.S.

Aviator Capital Fund V Global Master, LP

Azorra Explorer Holdings Limited

Azorra Aviation Holdings Limited

Boeing Digital Solutions, Inc. d/b/a Jeppesen

Donnelley Financial LLC

General Electric

JP Lease Products & Services Co.

JPA No. 165 Co., Ltd.

JPA No. 166 Co., Ltd.

Netology, LLC

Pivotal Corporate and Trust Solutions Limited

The Boeing Company

United Technologies Corporation - Pratt & Whitney

Rolls Royce Plc

SGI Aviation Services B.V.

## Insurance Providers and Brokers

Aircraft Finance Insurance Consortium (AFIC)

AmTrust

Arch

Argonaut Insurance Company

Ascot Specialty Insurance Company

Atrium Underwriters Limited

AxaXL

CAC Specialty

Federal Insurance Co (Chubb)

Global Aerospace Underwriting Managers Limited

Great Northern Insurance Company (Chubb)

Marsh USA, Inc.

Mercer Health & Benefits LLC

National Fire & Marine Insurance Company

National Union Fire Insurance Company of Pittsburgh, PA (AIG)

New Hampshire Insurance Co. (AIG)

State of Washington Department of Labor & Industries

The New Insurance Company, LLC [17]

Wesco Insurance (Berkshire Hathaway)

Westchester Fire Insurance Co. (Chubb)

XL Specialty Insurance (AxaXL)

Zurich

## Largest Unsecured Creditors of Debtors

Bank of Utah

Citibank, N.A.

Donnelley Financial Solutions, Inc.

Equiniti Trust Company, LLC

FlyDocs

ING Capital LLC

JPA No. 165 Co., Ltd.

JPA No. 166 Co., Ltd.

KEB Hana Bank, London Branch

Netology

Norddeutsche Landesbank Girozentrale

One Stamford Plaza

Rolls-Royce TotalCare Services Limited

Savills IRE

SGI Aviation Services B.V.

Three Stamford Plaza

UMB Bank, National Association

Wells Fargo Trust Company, National Association fka Wells Fargo Northwest, National Association

## Taxing/Licensing/Regulatory Authorities

Administration des Contributions Directes

City of Stamford Assessor's Office

CSC Global

CT Corporation

New York City Department of Finance

Massachusetts Department of Revenue

---

[17] The Company has filed a claim against a policy issued by The New Insurance Company as to which the Company is an additional named insured.

Connecticut Department of Revenue
Services

New York State Department of Taxation and
Finance

National Registered Agents, Inc.

The Office of the Revenue Commissioners
(Ireland)

## Utilities Providers

AT&T

Avaya

Crown Castle

Optimum Business

Three Ireland (Hutchison) Limited

Viatel

Virgin Media

Vodafone

Voice & Data Solutions

## Debtors' Professionals

Bruch Hanna LLP

Carey Olsen

Clifford Chance LLP

CSC Global

Daugherty, Fowler, Peregrin, Haught &
Jenson

Dikici Law Office

Evelyn Partners

FTI Consulting, Inc.

Gibson, Dunn & Crutcher LLP

Gilchrist Aviation Law, P.C.

Grant Thornton LLP

Greenhill & Co., LLC

Houlihan Lokey, Inc.

King & Wood Mallesons

KPMG – IRELAND

KPMG LLP

KPMG Luxembourg

Krauthamer & Associates, LLC

Kurtzman Carson Consultants LLC

White & Case LLP

Lowenstein Sandler

Lyons, Benenson & Company Inc.

Matheson LLP

Mercer (Ireland) Ltd.

MFA Consulting

Michelman & Robinson, LLP

Milbank LLP

Morgan, Lewis & Bockius LLP

Morris James LLP

Morris, Nichols, Arsht & Tunnel LPP

Norton Rose Fulbright

Ocorian Services (Bermuda) Limited

Ocorian Trust (Cayman) Limited

PricewaterhouseCoopers LLP

Smith, Gambrell & Russell, LLP

Sullivan & Worcester LLP

SyCip Salazar Hernandez & Gatmaitan

Wilmer, Cutler, Pickering, Hale and Dorr
LLP

Vedder Price PC

## Professionals of Other Parties

Akin Gump Strauss Hauer & Feld LLP

Allen & Overy LLP

Clifford Chance LLP

Glenn Agre Bergman & Fuentes LLP

K&L Gates LLP

Holland & Knight LLP

Paul, Weiss, Rifkind, Wharton & Garrison LLP

Pillsbury Winthrop Shaw Pittman LLP

Reed Smith LLP

Skadden, Arps, Slate, Meagher & Flom LLP

Watson, Farley & Williams LLP

White & Case LLP

## **Bankruptcy Judges**

Chief Judge Martin Glenn

Judge Cecelia G. Morris

Judge David S. Jones

Judge James L. Garrity, Jr.

Judge John P. Mastando III

Judge Lisa G. Beckerman

Judge Michael E. Wiles

Judge Philip Bentley

Judge Sean H. Lane

## **United States Trustee Office**

Alaba Ogunleye

Amanda D. Cassara

Andrea B. Schwartz

Andy Velez-Rivera

Annie Wells

Benjamin J. Higgins

Brian S. Masumoto

Carmen Davis

Daniel Rudewicz

Ercilia A. Mendoza

Greg M. Zipes

Ilusion Rodriguez

Jennifer L. Weston

Linda A. Riffkin

Madeleine Vescovacci

Mark Bruh

Mary V. Moroney

Nadkarni Joseph

Olga S. Allen

Paul K. Schwartzberg

Richard C. Morrissey

Shannon Scott

Shara Cornell

Susan Arbeit

Sylvester Sharp

Tara Tiantian

Valentina Vlasova

Victor Abriano

William K. Harrington

**Schedule 2**

**DISCLOSURE CHART**

| Party Name[1] | Relationship to Debtors[2] | Relationship to FTI[3] |
|---|---|---|
| A330 MSN 1432 Limited | Debtor | Current client |
| A330 MSN 1579 Limited | Debtor | Current client |
| Aetios Aviation Leasing 1 Ltd. | Debtor | Current client |
| Aetios Aviation Leasing 2 Ltd. | Debtor | Current client |
| Cayenne Aviation LLC | Debtor | Current client |
| Cayenne Aviation MSN 1123 Limited | Debtor | Current client |
| Cayenne Aviation MSN 1135 Limited | Debtor | Current client |
| DPM Investment LLC | Debtor | Current client |
| Intrepid Aviation Leasing, LLC | Debtor | Current client |
| N116NT Trust | Debtor | Current client |
| Panamera Aviation Leasing IV Limited | Debtor | Current client |

---

[1]   Where a party and the Debtors have multiple relationships, such parties are listed under each applicable category in the Debtors' Interested Party List. However, many entries with only minor differences appear to be referring to the same party. In such instances, alternate party names are listed herein.

[2]   This column lists the relationship(s) between the party and the Debtors as reported on the Debtors' Interested Party List.

[3]   A "current client" is an entity for which there are, as of the date hereof, active matters on which FTI is engaged; a "former client" is an entity for which there are no active matters as of the date hereof, but there may in the future be active matters. Use of the word "potential" before such designations signifies entities for which FTI was unable to determine whether any name similarities were a coincidence or whether the party in interest is related to a client in FTI's databases. FTI does not represent any "potential" clients in matters related to the Debtors or these cases. Please note that the identification of a party in interest herein is not an admission of a conflict, disabling or otherwise.

| Panamera Aviation Leasing VI Limited | Debtor | Current client |
|---|---|---|
| Panamera Aviation Leasing XI Limited | Debtor | Current client |
| Panamera Aviation Leasing XII Designated Activity Company | Debtor | Current client |
| Panamera Aviation Leasing XIII Designated Activity Company | Debtor | Current client |
| Voyager Aircraft Leasing, LLC | Debtor | Current client |
| Voyager Aviation Aircraft Leasing, LLC | Debtor | Current client |
| Voyager Aviation Holdings, LLC | Debtor | Current client |
| Voyager Aviation Management Ireland Designated Activity Company | Debtor | Current client |
| Voyager Finance Co. | Debtor | Current client |
| 10137768 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137772 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137773 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137788 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |

| 10137789 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
|---|---|---|
| 10137790 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137791 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137792 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137761 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| 10137764 Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 MSN 1491 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 MSN 1542 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 MSN 1552 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 MSN 1602 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 PDP-1 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| A330 PDP-2 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |

| | | |
|---|---|---|
| A330 PDP-4 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Aircraft MSN 41520 Singapore Pte Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Intrepid Aviation Asia Pte. Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Intrepid Aviation Luxembourg SARL | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Macan Aviation 2 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| N115NT Trust | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Pajun Aviation Leasing 1 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Pajun Aviation Leasing 2 Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Panamera Aviation Leasing Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Panamera Aviation Leasing VII Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Panamera Aviation Leasing X Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAH Leasing 1 LLC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |

| VAH Leasing 2 LLC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
|---|---|---|
| VAH Leasing LLC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAH Warehouse Holdings Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Leasing 1 DAC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Leasing 2 DAC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Leasing 3 DAC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Leasing 4 DAC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Leasing DAC | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| VAMI Warehouse Holdings Limited | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Voyager Leasing Ireland Ltd. (fka A330 MSN 1483 Ltd.) | Non-Debtor Affiliates, Including Company Managed Entities | Current client |
| Citadel Securities LLC | Common and Preferred Equity Holders | Current client on a matter unrelated to the Debtors or these cases |
| MacKay Shields High Yield ETF | Common and Preferred Equity Holders | Current client on a matter unrelated to the Debtors or these cases |

| Jefferies LLC | Common and Preferred Equity Holders | Current client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Citadel Securities LLC | Secured Noteholder and Indenture Trustee | Current client on a matter unrelated to the Debtors or these cases |
| MacKay Shields High Yield ETF | Secured Noteholder and Indenture Trustee | Current client on a matter unrelated to the Debtors or these cases |
| Microsoft Corporation | Secured Noteholder and Indenture Trustee | Current client on a matter unrelated to the Debtors or these cases |
| Wilmington Trust, National Association | Secured Noteholder and Indenture Trustee | Current client on a matter unrelated to the Debtors or these cases |
| Citibank, N.A. | Lender Administrative Agent | Current client on a matter unrelated to the Debtors or these cases |
| ING Capital LLC | Lender Administrative Agent | Current client on a matter unrelated to the Debtors or these cases |
| Norddeutsche Landesbank Girozentrale | Lender Administrative Agent | Former client on a matter unrelated to the Debtors or these cases |
| UMB Bank, N.A. | Lender Administrative Agent | Current client on a matter unrelated to the Debtors or these cases |
| Voyager Aviation Holdings, LLC | Lender Administrative Agent | Current client |
| Allianz Global Corporate & Specialty SE, U.K. Branch | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Apple Bank for Savings | Aircraft Financing Secured Parties | Former client on a matter unrelated to the Debtors or these cases |

| AXIS Specialty Europe SE, London Branch | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Credit Suisse Securities (USA) LLC | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| DVB Bank SE | Aircraft Financing Secured Parties | Former client on a matter unrelated to the Debtors or these cases |
| Fidelis Insurance Group | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Investec Bank plc. | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Mitsubishi UFJ Financial Group, Inc. | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Morgan Stanley Bank, N.A. | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| NongHyup Bank Co., Ltd. | Aircraft Financing Secured Parties | Former client on a matter unrelated to the Debtors or these cases |
| Rolls Royce | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Sompo International | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Shinhan Bank, New York Branch | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
| Sumitomo Mitsui Trust Bank, Limited | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |

| UMB Bank, National Association | Aircraft Financing Secured Parties | Current client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Air France | Aircraft Lessees | Current client on a matter unrelated to the Debtors or these cases |
| Philippine Airlines, Inc. | Aircraft Lessees | Former client on a matter unrelated to the Debtors or these cases |
| Societe Air France | Aircraft Lessees | Current client on a matter unrelated to the Debtors or these cases |
| IPUT Plc | Parties to Material Unexpired Leases with Debtors | Current client on a matter unrelated to the Debtors or these cases |
| Bank of America Corporation | Banks | Current client on a matter unrelated to the Debtors or these cases |
| Barclays Bank Ireland PLC | Banks | Current client on a matter unrelated to the Debtors or these cases |
| BNP Paribas | Banks | Current client on a matter unrelated to the Debtors or these cases |
| CitiBank, N.A. | Banks | Current client on a matter unrelated to the Debtors or these cases |
| DBS Bank Ltd | Banks | Current client on a matter unrelated to the Debtors or these cases |
| J.P. Morgan Chase & Co. | Banks | Current client on a matter unrelated to the Debtors or these cases |
| Jefferies LLC | Banks | Current client on a matter unrelated to the Debtors or these cases |

| OCBC Bank Ltd. | Banks | Former client on a matter unrelated to the Debtors or these cases |
| Wells Fargo Advisors | Banks | Former client on a matter unrelated to the Debtors or these cases |
| Wells Fargo Bank, National Association | Banks | Current client on a matter unrelated to the Debtors or these cases |
| Airbus S.A.S. | Material Contract Counterparties | Current client on a matter unrelated to the Debtors or these cases |
| General Electric | Material Contract Counterparties | Current client on a matter unrelated to the Debtors or these cases |
| The Boeing Company | Material Contract Counterparties | Current client on a matter unrelated to the Debtors or these cases |
| United Technologies Corporation - Pratt & Whitney | Material Contract Counterparties | Current client on a matter unrelated to the Debtors or these cases |
| Rolls Royce Plc | Material Contract Counterparties | Current client on a matter unrelated to the Debtors or these cases |
| AmTrust | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Arch | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| AxaXL | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Federal Insurance Co | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |

| Chubb | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Global Aerospace Underwriting Managers Limited | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| National Fire & Marine Insurance Company | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| National Union Fire Insurance Company of Pittsburgh, PA | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| AIG | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| New Hampshire Insurance Co. | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Berkshire Hathaway | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Westchester Fire Insurance Co. | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| XL Specialty Insurance | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Zurich | Insurance Providers and Brokers | Current client on a matter unrelated to the Debtors or these cases |
| Citibank, N.A. | Largest Unsecured Creditors of Debtors | Current client on a matter unrelated to the Debtors or these cases |
| ING Capital LLC | Largest Unsecured Creditors of Debtors | Current client on a matter unrelated to the Debtors or these cases |

10

| Norddeutsche Landesbank Girozentrale | Largest Unsecured Creditors of Debtors | Former client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Rolls-Royce TotalCare Services Limited | Largest Unsecured Creditors of Debtors | Current client on a matter unrelated to the Debtors or these cases |
| UMB Bank, National Association | Largest Unsecured Creditors of Debtors | Current client on a matter unrelated to the Debtors or these cases |
| CSC Global | Taxing/Licensing/Regulatory Authorities | Current client on a matter unrelated to the Debtors or these cases |
| AT&T | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Avaya | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Crown Castle | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Optimum Business | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Virgin Media | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Vodafone | Utilities Providers | Current client on a matter unrelated to the Debtors or these cases |
| Carey Olsen | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Clifford Chance US LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |

| CSC Global | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Evelyn Partners | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Gibson, Dunn & Crutcher LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Grant Thornton | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Greenhill & Co., Inc. | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Houlihan Lokey, Inc. | Debtors' Professionals | Former client on a matter unrelated to the Debtors or these cases |
| King & Wood Mallesons | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| KPMG LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Lowenstein Sandler | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Michelman & Robinson LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Milbank LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Morgan Lewis | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |

| Morris James LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| --- | --- | --- |
| Morris, Nichols, Arsht & Tunnel LPP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Norton Rose Fulbright | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| PricewaterhouseCoopers | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Sullivan & Worcester LLP | Debtors' Professionals | Former client on a matter unrelated to the Debtors or these cases |
| Vedder Price PC | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| White & Case LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Wilmer, Cutler, Pickering, Hale and Dorr LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |
| Akin Gump Strauss Hauer & Feld LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Allen & Overy LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Clifford Chance US LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| K&L Gates LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |

| Holland & Knight LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
|---|---|---|
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Pillsbury Winthrop Shaw Pittman LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Skadden, Arps, Slate, Meagher & Flom LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Reed Smith LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| Watson Farley & Williams LLP | Professionals of Other Parties | Current client on a matter unrelated to the Debtors or these cases |
| White & Case LLP | Debtors' Professionals | Current client on a matter unrelated to the Debtors or these cases |

<u>**Exhibit C**</u>

**Engagement Agreement**

CONFIDENTIAL

July 25, 2023


Michael Sean Ewing                          Robert Del Genio
Voyager Aviation Holdings, LLC              FTI Consulting, Inc.
Three Stamford Plaza                        1166 6th Ave | 14th Floor
301 Tresser Boulevard, Suite 602            New York, NY 10036
Stamford, CT 06901


**Re:  Voyager Aviation Holdings**

Dear Sean:

The purpose of this letter (this "Agreement" or the "Engagement Contract") is to confirm the understanding and agreement between Voyager Aviation Holdings, LLC (collectively with its direct and indirect subsidiaries and affiliates, the "Company" or "VAH"), Milbank LLP (the "Firm"), and FTI Consulting, Inc. ("FTI") concerning FTI's providing additional services as requested by the Firm and the Company in accordance with the engagement letter among FTI, the Firm and VAH, dated January 20, 2021 (the "January Engagement Letter"). This Agreement provides for FTI to provide certain temporary employees to VAH for Chief Restructuring Officer related duties (the "Services" and the engagement hereunder, the "Engagement") . This Agreement is effective on July 25, 2023 (the "Effective Date"). The FTI Standard Terms and Conditions attached hereto as Exhibit "A" (the "Standard Terms") are also incorporated herein and forms part of this Agreement.

**1.    CRO, Hourly Employees and Services**

FTI will provide Robert Del Genio to serve as the Company's Chief Restructuring Officer (the "CRO") reporting to the Board of Managers in connection with the Engagement. The CRO, shall have such duties as the Board of Managers may from time to time determine, and shall at all times report to and be subject to supervision by the Board of Managers. Such Services are to include:

- Working with the Company's board to manage the Company's restructuring efforts on a daily basis;
- Assist the Company in preparing for and operating as a debtor in possession in a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code," and the case thereunder, the "Chapter 11 Cases");
- If needed, provide testimony supporting the the Company's first day motions and petitions;
- If needed, provide testimony supporting the Company's plan of reorganization under chapter 11 of the Bankruptcy Code (the "Plan");
- Assist the Company in its efforts to transition aircraft to Azorra Explorer Holdings Limited ("Azorra"), as Purchaser under the Agreement for the Sale and Purchase of Certain Assets of Voyager (the sale contemplated thereby, the "Sale") to be entered into by Voyager Aviation Holdings, LLC, Voyager Aviation Management Ireland DAC, Azorra, and Azorra Aviation Holdings, LLC (solely as guarantor) during the novation period;
- If needed, provide testimony supporting the Sale;
- Assist in the wind-down of the Company's entities post-closing of the Sale in the US and Ireland as necessary;
- Assist in the completion of KPMG's U.S. and Ireland audit and tax work;
- Assist in managing the transition support services to be provided by Azorra;

1

- ▪ Assist the Company in preparation of the following in the Chapter 11 Cases: cash management reporting; statements of financial affairs and schedules of assets and liabilities; and monthly operating reports;
- ▪ Assist the Company with and participate in its initial debtor interview and the meeting of creditors under section 341 of the Bankruptcy Code;
- ▪ Assist the Company with its analysis of wind-down costs and procedures;
- ▪ Assist the Company in preparation of the liquidation analysis to be attached to the disclosure statement with respect to the Plan, and, if needed, provided testimony supporting such disclosure statement;
- ▪ Provide strategic communications advice and material development for internal and external communications in coordination with management and the Firm; and
- ▪ Such other services as mutually agreed upon by FTI and the Company.

Without limiting the foregoing, the CRO shall work with other senior management of the Company, and other professionals, to provide the Services.

In addition to providing the CRO, FTI may also continue to provide additional staff (the "Hourly Staff" and, together with the CRO, the "FTI Professionals") to VAH in relation to FTI's financial advisory and consulting services, subject to the terms and conditions of this Agreement. The Hourly Staff may be assisted by or replaced by other FTI professionals reasonably satisfactory to the Firm or VAH, as required, who shall also become Hourly Staff for purposes hereof. FTI will keep the Firm and VAH reasonably informed as to FTI's staffing and will not add additional Hourly Staff to the assignment without first consulting with the Firm and the Company.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as the CRO and the principal bankruptcy financial advisors to the debtors and debtors in possession in those cases under a general retainer, subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The services we will provide in connection with the Engagement will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Firm and the Company as to the nature of the services that we will render and the scope of our engagement.

As typical with this type of engagement, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of the Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

The engagement of FTI to perform the Services shall be subject to the approval of the court in which the Chapter 11 Cases are commenced (the "Bankruptcy Court") and shall be substantially as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court. The Company agrees, at the Company's expense, to file an application (the "Application") to employ FTI as crisis and turnaround manager *nunc pro tunc* to the date of commencement of the Chapter 11 Cases pursuant to § 363 of the Bankruptcy Code. VAH agrees to file all required applications, including the Application, for the employment or retention of FTI at the earliest practical time.

The Services do not replace those provided to the Firm under the January Engagement Letter and do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced and which shall be obtained

directly where required by the Company at Company's expense; or (ii) investment banking, including valuation or securities analysis, including advising any party or representation of the Company on the purchase, sale or exchange of securities or representation of the Company in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Company to provide any investment banking or broker-dealer services. The Company agrees to supply office space, and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

2.    **Compensation to FTI**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by FTI's standard hourly rates, summarized as follows:

**United States**

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1045 – 1,495 |
| Directors / Senior Directors / Managing Directors | 785 – 1,055 |
| Consultants/Senior Consultants | 435 – 750 |
| Administrative / Paraprofessionals | 175 – 325 |

Hourly rates are generally revised periodically.  FTI will provide the Firm and VAH with advance of any changes to FTI's rates.  To the extent this engagement requires services of FTI's international divisions or personnel, the time will be multiplied by FTI's standard hourly rates applicable for such international divisions or personnel (which, for the avoidance of doubt, are within the ranges set forth above). Note that FTI does not provide any assurance regarding the outcome of FTI's work and FTI's fees are not contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on the Company's behalf during this Engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the Engagement. Further, if FTI and/or any of its emloyees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Company at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

Unless directed in writing by the Company to the contrary, we will submit to the Company, on a regular basis, invoices payable upon receipt, for our fees and expenses incurred in connection with the Engagement, with copies provided to the Firm. All invoices will be paid by the Company.  In no event shall the Firm be liable in any capacity for any amounts owed to or by FTI arising out of or in connection with the Engagement and the Engagement Contract (as defined in the Standard Terms) (including, without limitation, any of FTI's invoices, expenses, costs, damages or other liabilities in connection with this Engagement), all of which shall be the sole responsibility of the Company.

**Cash on Account:**

FTI is currently holding $100,000 from VAH "on account" in connection with the services provided under the January Engagement Letter and to be applied to its professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account").  Upon execution of this Agreement, VAH shall supplement

the Initial Cash on Account in the amount of $200,000 so that the total amount held will be $300,000 in consideration for the Services provided under this Agreement and those under the January Engagement Letter (together with the Initial Cash on Account, the "Cash on Account"). To the extent that the Cash on Account exceeds our fees, charges and disbursements upon the completion of the Engagement and the engagement under the January Engagement Letter, we will refund any unused portion. VAH agrees to increase or supplement the Cash on Account from time to time during the course of the Engagement in such amounts as VAH and we mutually shall agree are reasonably necessary to increase the Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain.  Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services.  Upon transmittal of the invoice, we may immediately draw upon the Cash on Account (as replenished from time to time) in the amount of the invoice.  The Company agrees that invoices are due upon receipt and will promptly wire the invoice amount to us as replenishment of the Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice.  We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements; provided that to the extent the Company has provided notice of any disputed fees, FTI will not apply the Cash on Account to such fees until the dispute is resolved.

If, and only if, local bankruptcy rules or the order approving the Application so require, FTI shall file with and serve on creditors entitled to notice thereof, a statement of staffing, professional services, compensation or expenses, on a quarterly basis, or as the Bankruptcy Court or rules may direct, and creditors and other parties in interest shall have an opportunity to object thereto and request a hearing thereon.  In the event that FTI is employed post-petition as a "professional person" pursuant to section 327 of the Bankruptcy Code, Bankruptcy Court approval will generally be required to pay FTI's fees and expenses for post-petition Services.  In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case.  The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees.  If the Bankruptcy Court approves such a procedure, we will submit invoices on account against our final fee.  These interim invoices will be based on such percentage as the Bankruptcy Court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account").  We will hold the Additional Cash on Account, as we have the Cash on Account.  Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing.  The unused portion, if any, of the Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements.  Any requisite court permission will be obtained in advance.  We will then hold any portion of the Cash on Account and the Additional Cash on Account not otherwise properly

applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

**Additional Provisions Regarding Fees:**

a) FTI may stop work or terminate the Agreement immediately upon the giving of written notice to the Company (i) if payments are not made in accordance with this Agreement, (ii) if the Application is not approved by the Bankruptcy Court, (iii) if the Chapter 11 case is dismissed or converted to a chapter 7 proceeding, or (iv) if a chapter 11 trustee or examiner with expanded powers is appointed.

b) The Company agrees that FTI is not an employee of the Company and the FTI employees and independent FTI contractors who perform the Services are not employees of the Company, and they shall <u>not</u> receive a W-2 from the Company for any fees earned under this Engagement, and such fees are not subject to any form of withholding by the Company. The Company shall provide FTI a standard form 1099 on request for fees earned under this Engagement.

c) Copies of Invoices shall be sent by facsimile or email as follows:

To the Company at:

Voyager Aviation Holdings, LLC
Three Stamford Plaza
301 Tresser Boulevard, Suite 602
Stamford, CT 06901
Attention: Michael Sean Ewing

d) If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

**3.      Availability of Information**

In connection with the FTI Professionals' activities on the Company's behalf (or the Firm, as applicable), the Company agrees (i) to furnish the FTI Professionals with all information and data concerning the business and operations of the Company which the FTI Professionals reasonably request, and (ii) to provide the FTI Professionals with reasonable access to the Company's officers, directors, partners, employees, retained consultants, independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this agreement.

4.      **Notices**

Notices under this Agreement to the Company shall be provided as set forth in paragraph 2(c).

Notices to FTI shall be to:

1166 6th Avenue, 14th Floor
New York, NY 10036
Attn: Robert Del Genio
Phone: 212-813-1640
Email: Robert.DelGenio@fticonsulting.com

Notices shall be provided by (a) fax or email, (b) hand delivery, or (c) overnight delivery. If provided by fax, email or hand delivery, they shall be deemed effective the date given. If provided by overnight delivery, they shall be deemed effective on the date of actual receipt.

5.      **Miscellaneous**

This Agreement: represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the provision of the Services other than the January Engagement Letter, which is supplemented by this Agreement; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns; may be executed by facsimile (followed by originals sent via regular mail), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of the Company and FTI. The provisions of this Agreement shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof.

Based on our understanding of the parties involved in this matter, we have compiled a list of interested parties (the "Potentially Interested Parties") and have undertaken a limited review of our records to determine FTI's professional relationships with the Company and such Potentially Interested Parties. From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI Professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

If this letter correctly sets forth our understanding, please so acknowledge by signing below and returning a signed copy of this letter to us as of the Effective Date.

6

Very truly yours,

FTI CONSULTING, INC.

By: _____
Name: Robert Del Genio
Title: Senior Managing Director

MILBANK LLP, counsel to the Company

By: _____
Name:
Title:

ACCEPTED AND AGREED as of this 25 day of July, 2023.

On behalf of Voyager Aviation Holdings, LLC and its direct and indirect subsdiaries and affiliates

By: _____
Name: Michael Sean Ewing
Title: Chief Financial Officer

Very truly yours,

FTI CONSULTING, INC.

By: _____
Name: Robert Del Genio
Title: Senior Managing Director

MILBANK LLP, counsel to the Company

By: *Paul Denaro* _____
Name: Paul Denaro
Title: Partner

ACCEPTED AND AGREED as of this 25 day of July, 2023.

On behalf of Voyager Aviation Holdings, LLC and its direct and indirect subsidaries and affiliates

By: _____
Name: Michael Sean Ewing
Title: Chief Financial Officer

Very truly yours,

FTI CONSULTING, INC.

By: _____
Name: Robert Del Genio
Title: Senior Managing Director

MILBANK LLP, counsel to the Company

By: _____
Name:
Title:

ACCEPTED AND AGREED as of this 25 day of July, 2023.

On behalf of Voyager Aviation Holdings, LLC and its direct and indirect subsdiaries and affiliates

By: *Michael Sean Ewing*
    236E6DC8B61A4CB... _____
Name: Michael Sean Ewing
Title: Chief Financial Officer

# EXHIBIT A

# FTI CONSULTING, INC.

# STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with the Voyager Aviation Holdings, LLC and Milbank LLP dated as of July 25, 2023 (the "Engagement Letter"). The Engagement Letter and these Standard Terms and Conditions annexed thereto (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

## 1.    Reports and Advice

1.1    **Use and purpose of advice and reports—** Any advice given or report issued by us is provided solely for the use and benefit of the Company and the Firm and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither the Company nor the Firm shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

## 2.    Information and Assistance

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** –Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  The Company shall also notify us if the Company subsequently learns that the information provided is incorrect or inaccurate in any material respect or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

8

3.      **Additional Services**

3.1     **Responsibility for other parties**— The Company shall be solely responsible for the work and fees of any other party engaged by the Company or the Firm to provide services in connection with the Engagement regardless of whether such party was introduced to the Company or the Firm by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to the Company or the Firm without the Company's written authorization.

4.      **Confidentiality**

4.1     **Restrictions on confidential information**— All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

    4.1.1   is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2   is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3   is or has been independently developed by the recipient (without the use of confidential information); *provided*, that it is understood and agreed that nothing contained in this Clause 4.1.3 permits FTI to disclose information developed by FTI in connection with this Engagement.

4.2     **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3     **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and the Company specifically agree otherwise in writing.

4.4     **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that we shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5     **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies; *provided*, that we shall keep such materials confidential in accordance with the terms of this Engagement Contract.

4.6     **Data Protection**

4.6.1   If this Engagement involves the processing of personal data (also referred to herein as personal information) as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 ("**GDPR**"), the Company and FTI shall only transfer the personal data to each other and process the personal data in accordance with Data Protection Laws (which for the purpose of this clause shall have the meaning given to that term in Schedule B).

4.6.2    The parties agree that, in circumstances where FTI remains certified under the EU-US Privacy Shield scheme, the legal mechanism to be relied on for the transfer of the personal data from the Company to FTI for the purposes of compliance with Chapter V of the GDPR shall be the EU-US Data Privacy Framework as assessed by the European Commission pursuant to Decision C(2023) 4745 of 10 July 2023 (the "**Data Privacy Framework**"). FTI agrees to take all steps reasonably necessary to facilitate the parties' reliance on the Data Privacy Framework as the legal transfer mechanism to safeguard the importation of personal data provided to it by the Company for the purposes of GDPR including (a) updating its privacy notices to refer to the Data Privacy Framework Principles before 10 October 2023, (b) maintaining its certification with the US Department of Commerce, and (c) ensuring ongoing compliance with the Data Privacy Framework Principles.

4.6.3    In the event that, for any reason, the Data Privacy Framework ceases to apply as an applicable means to facilitate the transfers of the personal data for the purposes of compliance with Chapter V of the GDPR, the terms of the EU Data Protection Schedule attached hereto as Schedule B shall apply to this engagement and it shall form an integral part of this Engagement Contract.

4.6.4    If this Engagement involves the processing of personal data (also referred to herein as personal information) as governed by the California Consumer Privacy Act, the terms of the California Data Protection Schedule attached hereto as Schedule C shall apply to this engagement and it shall form an integral part of this Engagement Contract.

4.6.5    In the event of a conflict between the terms of this Engagement Contract and the terms of Schedule B or Schedule C, the terms of Schedule B or Schedule C shall prevail in relation to the processing of such personal data. If such personal data is processed in connection with this engagement, the Company shall notify FTI in writing before any personal data is disclosed to FTI.

**5.    Termination**

5.1    **Termination of Engagement with notice**— Any of the Company, the Firm or FTI may terminate the Engagement Contract for whatever reason upon written notice to the other parties. Upon receipt of such notice, we will stop all work immediately.  Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received. Notwithstanding anything to the contrary in the Engagement Contract, FTI agrees and acknowledges that the Firm shall have no liability in any capacity for any amounts owed to or by FTI arising out of or in connection with the Engagement and the Engagement Contract (including, without limitation, any of FTI's invoices, expenses, costs, damages or other liabilities in connection with this Engagement), all of which shall be the sole responsibility of the Company.

5.2    **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.    Indemnification, Insurance and Liability Limitation**

6.1    **Indemnification –**  The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, bad faith, fraud or violation of applicable law of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable, documented legal fees and disbursements of outside legal counsel as incurred

in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination. FTI understands and agrees that the Firm is not indemnifying FTI or any other party          in          connection          with          this          Engagement.

6.2    **Insurance –**In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company's directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

6.3    **Limitation of liability –** Excluding claims arising out of an Indemnified Person's gross negligence, willful misconduct, bad faith, fraud or violation of applicable law, the Company agrees that no Indemnified Person shall be liable to the Company, the Firm, or its successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

**7.    Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, and Compliance with Law**

7.1    **Governing Law**The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2    Jurisdiction. - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The Bankrutpcty Court having jurisdiction over the Company's Bankruptcy case shall have exclusive jurisdcrtion in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising form it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3    **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4    **Compliance with Laws** - The Company agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in

11

connection with this Engagement.  The Company further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Company or FTI. The Company shall promptly notify FTI in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the Company or its directors, officers, employees or agents.

FTI CONSULTING, INC.

**<u>Confirmation of Standard Terms and Conditions</u>**

Subject to the terms and conditions of the Engagement Letter, we agree that FTI Consulting, Inc. is engaged upon the terms set forth in these Standard Terms and Conditions as outlined above.

**On behalf of Voyager Aviation Holdings, LLC**

By: _Michael Sean Ewing_    _____
Name: Michael Sean Ewing
Title: Chief Financial Officer


Date: July 25, 2023

**TO BE ON FTI LETTERHEAD**
<u>SCHEDULE A</u>

**STANDARD RELEASE LETTER**


**[Nonclient Recipient Letterhead]**

**[Date]**

FTI Consulting, Inc.

Dear Mr./Ms. _____:

_____ ("Client") has informed **[name of recipient]** that FTI Consulting, Inc. ("FTI") has performed certain procedures to assist Client in connection with the _____.  We understand that the work performed by FTI was performed in accordance with instructions provided by Client and was performed exclusively for Client's sole benefit and use.

Client has requested that FTI provide **[name of recipient]** access to the report of its findings dated **[date]**.  **[name of recipient]** acknowledges that this report was prepared at the direction of Client and may not include all procedures deemed necessary for the purposes of **[name of recipient]** and that certain findings and information may have been communicated to Client that are not reflected in the report.   **[name of recipient]** further acknowledges that (a) the report is being provided for informational purposes only; (b) the report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI  as to the accuracy, completeness and/or fairness of presentation of the Report or any statements or information contained therein; and (c) **[name of recipient]** will make any decisions based on its own investigation, due diligence and analysis, independent of, and without reliance on or reference to, the contents of the report or any other opinions or conclusions of FTI.

In consideration of FTI allowing **[name of recipient]** access to the report and, if requested by **[name of recipient]**, discussing the report, **[name of recipient]** agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to **[name of recipient]** in connection with such access.

**[name of recipient]** agrees to release FTI and its personnel from any claim by **[name of recipient]** that arises as a result of FTI permitting **[name of recipient]** access to the report.  Further, **[name of recipient]** agrees not to disclose or distribute the report, or information received, orally or in writing from FTI to any other parties without FTI's prior written consent.

Acknowledged by **[name of recipient]** representative:

By:  _____
        (Name of Company official

Title:  _____

Date:  _____

14

SCHEDULE B

## FTI CONSULTING DATA PROTECTION SCHEDULE

This Data Protection Schedule ("**Schedule**") forms part of the contract for services to which it is an attachment (the "**Contract**") between the client party identified in the Contract (the "**Client**") and the relevant FTI Consulting group entity identified in the Contract ("**FTI**").

**1       Definitions**

1.1      In this Schedule, unless otherwise defined herein, all defined terms shall have the meaning set out in the Contract.

1.2      In this Schedule, the following terms shall have the meanings set out below:

1.2.1    "**Data Protection Laws**" means all legislation protecting the personal data of natural persons that is applicable to the processing of Personal Data under this Schedule, including (without limitation) the GDPR and any national legislation which supplements the GDPR, and the data protection laws of any other country, state or territory which apply to such processing*;*

1.2.2    "**EEA Standard Contractual Clauses**" means the Standard Contractual Clauses set out in the European Implementing Decision (EU) 2021/914 on standard contractual clauses for the transfer of personal data to third countries pursuant to Regulation (EU) 2016/679, as updated, amended, replaced or superseded from time to time by the European Commission;

1.2.3    "**GDPR**" means the General Data Protection Regulation (EU) 2016/679;

1.2.4    "**Restricted Transfer**" means a transfer of Personal Data from Client to FTI in circumstances where such transfer would be prohibited by Data Protection Laws in the absence of the EEA or UK Standard Contractual Clauses;

1.2.5    "**Standard Contractual Clauses**" means either the EEA or UK Standard Contractual Clauses, as applicable to a Restricted Transfer;

1.2.6    "**UK Standard Contractual Clauses**" means the standard contractual clauses for the transfer of personal data to Processors established in third countries which do not ensure an adequate level of protection as set out in Commission Decision 2010/87/EU, as updated, amended, replaced or superseded from time to time by the UK government; "**UK GDPR**" means the GDPR as transposed into United Kingdom national law by operation of section 3 of the European Union (Withdrawal) Act 2018 and as amended by the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019; and

1.2.7    "**Personal Data**", "**Process**", "**Controller**", "**Processor**", "**Data Subject**", "**Supervisory Authority**" and "**Personal Data Breach**" shall have the meanings given to them in the Data Protection Laws.

**2       Controller Terms**

2.1      FTI and the Client will each act as separate and individual Controllers in relation to any Personal Data (including, without limitation, Personal Data relating to any of the Client's workers, FTI's workers, any litigation or arbitration opponent or customer or vendor or transaction partner) Processed by the Client or FTI to deliver the services set out under the Contract.

2.2      FTI and the Client will each comply with its own respective obligations under the Data Protection Laws in relation to their Processing of Personal Data under the Contract. In particular, the Client will ensure that any

disclosures of Personal Data to FTI are lawful, and, in each case where necessary under the Data Protection Laws, the Client has notified and secured the consent of the relevant Data Subjects.

2.3    FTI may appoint Processors as required to deliver the services, who will process the Personal Data on FTI's behalf and at FTI's direction. Further, FTI may disclose Personal Data to other Controllers:

2.3.1    where necessary to deliver the services (including, but without limitation, law firms, accountants, other third party experts and any member of FTI's group of companies); or

2.3.2    pursuant to a legally binding written request, an order or request of a court of competent jurisdiction or any governmental or regulatory authority or where disclosure is required by applicable law or regulation ("**Legal Process**").  In relation to any Legal Process, FTI shall assess the lawfulness of the request before responding, and shall take any steps required by Data Protection Laws to protect Personal Data prior to its disclosure (including, without limitation, with respect to data minimization and data security);

2.4    *In respect of any Restricted Transfer subject to the GDPR, the parties hereby enter into Module 1 of the EEA Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which is hereby incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer.  The parties make the following selections for the purposes of Module 1:*

2.4.1    *Clause 7 – Docking clause shall apply;*

2.4.2    *Clause 11(a) – Redress the optional language shall not apply;*

2.4.3    *Clause 13(a) – Supervision*

*"The supervisory authority with responsibility for ensuring compliance by the data exporter [i.e. Client] with Regulation (EU) 2016/679 as regards the data transfer, as indicated in Annex 1.C [i.e. the Irish Data Protection Commission], shall act as competent supervisory authority.".*

2.4.4    *Clause 17 – Governing law "Option 1" shall apply and the "Member State" shall be the Republic of Ireland;*

2.4.5    *Clause 18 – Choice of forum and jurisdiction the "Member State" shall be the Republic of Ireland;*

2.4.6    *Annex 1 – the data exporter is Client and the data importer is FTI (in each case as identified, including in relation to their places of establishment, in the Principal Agreement) and as set out below in Annex 1 to this Schedule, and the description of transfer is deemed to be as described in Annex 1 to this Schedule;*

2.4.7    *Annex 2 – the technical and organizational security measures are deemed to be as described in Annex 2 to this Schedule; and*

2.4.8    *Annex 3 – not applicable.*

2.5    *In respect of any Restricted Transfer subject to the UK GDPR, the parties hereby enter into the UK Standard Contractual Clauses (with Client as data exporter and FTI as data importer), which are incorporated by reference into this Schedule and which shall come into effect upon the commencement of a Restricted Transfer. For the purposes of clause II h) of the UK Standard Contractual Clauses, the Parties shall be deemed to have selected option (iii).  Annex 2 to the UK Standard Contractual Clauses shall be deemed to be prepopulated with the relevant sections of the Annex to this Schedule.  If at any time the UK government approves the EEA Standard Contractual Clauses for use under the UK GDPR, the provisions of paragraph 2.4 shall apply in place of this paragraph 2.5 in respect of Restricted Transfers subject to the UK GDPR,*

*subject to any modifications to the EEA Standard Contractual Clauses required by the UK GDPR (and subject to the governing law of the EEA Standard Contractual Clauses being English law).*

2.6    The Client acknowledges and agrees that certain Processors or Controllers engaged by FTI under paragraph 2.3 may be located in places that may require cross-border transfers of Personal Data. In respect of transfers by FTI to such Controllers or Processors, FTI will take steps in accordance with the Data Protection Laws to ensure an adequate level of protection for the Personal Data Processed by such Processors or Controllers. Where such a Controller or Processor notifies FTI that it may no longer be able to provide an adequate level of protection in accordance with Data Protection Laws, FTI shall independently assess the level of protection provided and, where necessary, shall take mitigating steps to improve the level of protection or, where this is not possible, terminate the transfer.

2.7    The Client acknowledges that FTI's email records are replicated onto a Microsoft 365 Cloud system in the United States of America and the Client hereby consents that any Personal Data that is provided to FTI by email will be replicated accordingly. To the extent that the Client wishes to transmit certain information or data to FTI and the Client objects to that data being replicated in accordance with this paragraph, the Client will use a communication or transmission method other than e-mail or will use an alternative e-mail system.

17

**Annex 1:**

**A. List of Parties**

**Data Exporter**

**Name:** Voyager Aviation Holdings, LLC (collectively with its direct and indirect subsidiaries and affiliates)

**Address:** Three Stamford Plaza, 301 Tresser Boulevard, Suite 602, Stamford, CT 06901

**Contact person's name, position and contact details:** Michael Sean Ewing, Chief Financial Officer

**Activities relevant to the data transferred under these Clauses:** Operations as a debtor in possession in a case under chapter 11 of title 11 of the United States Code, including with respect to restructuring, asset sales, wind-downs, audit and tax activities

**Signature:**

*Michael Sean Ewing*

**Date:** July 25, 2023

**Role:** Controller

**Data Importer**

**Name:** FTI Consulting Inc.

**Address:** 1166 6th Ave | 14th Floor, New York, NY 10036

**Contact person's name, position and contact details:** Robert Del Genio, Senior Managing Director

**Activities relevant to the data transferred under these Clauses:** Provision of financial advisory and consulting services and performance of Chief Restructing Officer related duties

**Signature:**

**Date:** July 25, 2023

**Role:** Controller

**B. Description of Transfer**

This Annex includes certain details of the Processing of Personal Data by FTI under the Principal Agreement.

18

<u>Annex 1:</u>

**A.  <u>List of Parties</u>**

<u>Data Exporter</u>

<u>Name:</u> Voyager Aviation Holdings, LLC (collectively with its direct and indirect subsidiaries and affiliates)

<u>Address:</u> Three Stamford Plaza, 301 Tresser Boulevard, Suite 602, Stamford, CT 06901

<u>Contact person's name, position and contact details:</u> Michael Sean Ewing, Chief Financial Officer

<u>Activities relevant to the data transferred under these Clauses:</u> Operations as a debtor in possession in a case under chapter 11 of title 11 of the United States Code, including with respect to restructuring, asset sales, wind-downs, audit and tax activities

<u>Signature:</u>


<u>Date:</u> July 25, 2023

<u>Role:</u> Controller


<u>Data Importer</u>

<u>Name:</u> FTI Consulting Inc.

<u>Address:</u> 1166 6th Ave | 14th Floor, New York, NY 10036


<u>Contact person's name, position and contact details:</u> Robert Del Genio, Senior Managing Director

<u>Activities relevant to the data transferred under these Clauses:</u> Provision of financial advisory and consulting services and performance of Chief Restructing Officer related duties

<u>Signature:</u>

*Robert A. Del Genio*

<u>Date:</u> July 25, 2023

<u>Role:</u> Controller


**B.  <u>Description of Transfer</u>**

This Annex includes certain details of the Processing of Personal Data by FTI under the Principal Agreement.

18

1.      **Subject matter and duration of the Processing of the Personal Data**

The subject matter and duration of the Processing of the Personal Data are set out in the Principal Agreement and this Schedule.

2.      **The nature and purpose of the Processing of the Personal Data and transfer**

FTI is engaged to provide Services to Client which involve the Processing of Personal Data.  The scope of the Services are set out in the Principal Agreement, and the Client Personal Data will be Processed by FTI for purposes determined by it, in connection with the delivery of those Services and compliance with the terms of the Principal Agreement, including this Addendum, as well as applicable laws.

3.      **The categories of Personal Data transferred**

Client customer or employee information which may be collected in the course of delivering consulting and advisory services to Client, including name, title, gender, personal contact details (address, telephone number, email address), work address, work email, work telephone numbers, job title, and other types of Personal Data supplied by the Client to FTI pursuant to the Principal Agreement.

4.      **The categories of Data Subject whose personal data is transferred**

The categories of Data Subjects are determined by the nature of the client engagement, the details of which are covered in the Principal Agreement.

5.      **The obligations and rights of Client**

The obligations and rights of Client are set out in the Principal Agreement and this Schedule.

6.      **Frequency of Restricted Transfers (where applicable):**

As necessary to deliver Services for the duration of the Principal Agreement.

7.      **The period for which Personal Data subject to Restricted Transfers will be retained (where applicable):**

In accordance with FTI's data retention policies, copies of which are available upon request.


C, Competent Supervisory Authority

The competent Supervisory Authority in accordance with Clause 13, is the Irish Data Protection Commission.

## Annex 2: Technical and Organizational Security Measures

FTI Consulting maintains the following technical and organizational security measures when processing Personal Data for its clients.

- Measures of pseudonymisation and encryption of personal data

When data at rest leaves our direct control (such as backup tapes, removable hard drives, etc.) the data is encrypted using AES 256-bit encryption. All laptops utilize full disk encryption. Data that is in transit over public circuits is encrypted in transit using SSL. FTI Consulting additionally deploys firewalls throughout its networks to allow and deny specific network traffic using key indicators such as source/destination address, source/destination port, etc.

- Measures for ensuring ongoing confidentiality, integrity, availability and resilience of processing systems and services Measures for ensuring the ability to restore the availability and access to personal data in a timely manner in the event of a physical or technical incident

FTI requires new employees/contractors to acknowledge receipt of the following policies including: Code of Ethics and Business Conduct, Anti-Corruption Policy,
Acceptable Use of Technology Resources, Confidentiality Agreement, Employee Handbook
Policy on Inside Information & Insider Trading, and Time Recording Policy.

FTI Consulting has a documented policy for business continuity and disaster recovery that has been approved by management, communicated properly and is maintained and reviewed. The general details are reflected in the FTI Consulting Information Security Policy. The recovery point objective exceeds 4 hours and the recovery time objective exceeds 24 hours.  The specific tools used for backups vary by region.

- Processes for regularly testing, assessing and evaluating the effectiveness of technical and organisational measures in order to ensure the security of the processing

FTI has access to all major vendor security bulletins and have controls over identifying, scheduling, testing, and deploying patches. The deployment time is 14 days for high and within 24 hours for critical/emergency patches.

FTI has controls over identification of vulnerabilities, risk ranking, reporting, and remediation.  This includes perimeter vulnerability scans that must be performed at least quarterly and semi-annual internal vulnerability scans that cover workstations, servers, and network devices.

FTI performs internal penetration test to identify flaws in the internal security controls that could allow an attacker to surreptitiously gain access to sensitive data and/or disrupt critical business systems.  The organization must also perform external network penetration test to identify potential vulnerabilities which could be exploited to gain access to systems and data or to establish a foothold into internal network from which to launch further attacks.

FT's cybersecurity team tracks the resolution of vulnerabilities. Vulnerabilities that are not resolved as part of patching cycles must be tracked on a vulnerability log or similar mechanism.

- Measures for user identification and authorization

FTI uses unique IDs and if generic IDs should be disabled unless there is an approved security exception.  FTI users authenticate through Active Directory (AD), SSO used when possible, and remote connection requires two factor authentication and leverages FTI's Corporate DUO two factor technology. Duo Security generates passcodes (similar to a PIN Code) to mobile devices for login and can receive push notifications for easy updates. Duo Security is integrated with OneLogin (our SSO platform) providing a unified authentication solution.

Privileged and remote access must include multi-factor authentication and secure mechanisms (e.g., TACACs+, RADIUS) must be used on all network devices.
FTI password complexity (i.e. characters, length), lockout settings, expiration settings meets the following requirements:

20

.     Contain both upper and lower case characters (e.g., a-z, A-Z)
·     Have digits and punctuation characters as well as letters e.g., 0-9,!@#$%^&*()_+|~-=\`{}[]:";"<>?,./)
·     Contains at least 12 characters for standards accounts and 15 characters in length for admin accounts
·     Must be changed at least every 90 days
·     Are not words in any language, slang, dialect, jargon, etc.
·     Are not based on Confidential Information, names of family, etc.
·     User accounts are locked after 10 unsuccessful logins. Account lockout for 30 mins. Reset after 30 mins.
·     Password history - 24 passwords remembered

Passwords are stored protected in an encrypted format.

- Measures for the protection of data during transmission and measures for the protection of data during storage

FTI has Data Loss Prevention (DLP) and extrusion prevention tools that restrict sending sensitive data over unsecure mail. Anomalies that exceed the normal traffic patterns are noted and appropriate action is taken to address them.

FTI protects data in transmission which include the following acceptable methods:

- Email: Transport Layer Security ("TLS") Internet protocol, which provides security for all email transmissions over the public Internet may be setup with using opportunistic or mandatory TLS connections. Only TLS 1.2 or TLS 1.3 is acceptable.

- "Mailbox to mailbox" encryption that secures email messages and electronic files (using 256-bit AES encryption).

- Secure FTP: FTP utilizes TLS or SSH to allow us to share data with clients securely over the Internet. Only TLS 1.2 or TLS 1.3 is acceptable.

- External Encrypted Drive: Must use FIPS 140-2/AES 256-bit encryption or stronger.

- File Stores: Matter/Engagement related files stored centrally on the network are secured so that only those explicitly authorized can access the files.

FTI stores data in an environment that is not internet facing and segregated from the demilitarized zone by a firewall. The data must be logically segregated from other client or corporate data. Different tools may be employed depending upon the nature and/or location of the work.

- Measures for ensuring physical security of locations at which personal data are processed

Specific physical security provisions vary depending on office location, however, as per the Information Security policy, access to company premises, including delivery and loading areas, must require badge access. Badge access is managed by local facilities or ITG, who use a badge kiosk to produce access badges. All badge issuances and updates require management approval.

- Measures for ensuring events logging

FTI logs activity which is stored for 7 years. Data is logged at sufficient level (i.e. user ID, activity) and logging is enabled for the entire environment. The logging must provide relevant information (i.e. authorized & unauthorized attempts, remote access). System event and audit logs should capture the following events as applicable:

- Authentication failures
- Software or service failures
- Logon and use of privileged IDs
- Database changes

21

- Adding/deleting users
- Password Changes
- Adding/deleting groups and/or users associated with groups
- Changing audit log configuration or disabling audit subsystem

FTI uses SecureWorks which provides a Security Incident and Event Management (SIEM). The foundation of the SIEM includes Red Cloak endpoint event logs analysis, which includes an industry-leading assessment of current and zero-day threats and vulnerabilities.

- Measures for ensuring system configuration, including default configuration Measures for internal IT and IT security governance and management

FTI has processes in place to confirm compliance with configuration standards.  This includes a process for newly created device (i.e., checklist), at least annual reviews and hardening, removal of unnecessary / insecure services, and alarms set for key events (i.e. change in security group, configuration).

- Measures for certification/assurance of processes and products

FTI holds the Certified Enterprise designation from Verizon Cybertrust and participates in their Security Management Program (SMP).  The SMP is a comprehensive security risk reduction and certification program that addresses all aspects of proactive information security, from network and system analysis to physical and policy inspection.  The cornerstone of SMP is the International Standards Organization (ISO) standard 27002.

As part of the Cybertrust Third Party assessment schedule, FTI Consulting's Global Cybersecurity and Privacy function undergoes the following reviews by the Verizon Security Certification organization:

- Policy Review — evaluates the documentation and inspects the contents of key security policies — Annually.
- Process and Procedure Validation — Annually.
- Physical Inspection — evaluates the implementation of security controls in the physical environment surrounding critical network infrastructure, including doors, HVAC, entry logs, power redundancy, etc. — Annually.
- External Risk Assessments (Network and System-level scans) — Quarterly identifies possible risk areas in an organization's external network infrastructure and assesses its consistency with key controls.
- Penetration testing (External and Internal – Network and System-level) is conducted by a separate third-party — Annually.

Individual business units may hold additional certifications or use tools that are supported by additional certifications.

- Measures for ensuring data minimisation

FTI only acquires data for the intended purpose by working with the client or business partner to ensure only the minimum amount of necessary data is obtained.

- Measures for ensuring data quality

FTI Consulting is dedicated to providing its clients with high quality services that meet our standards of excellence and integrity.  The quality of the work for each of our clients is monitored by the Senior Managing Directors responsible for each engagement along with the highly qualified colleagues in their practice teams and business segments.  On a broader level, FTI sets the tone for our global organization in our Code of Conduct (https://www.fticonsulting.com/~/media/Files/us-files/our-firm/guidelines/fti-code-of-conduct.pdf) which discusses our commitment to quality throughout, and in particular in our Statement of Values.

FTI takes into account the principle of purpose limitation, while making sure that the data is adequate, relevant and

not excessive for the legitimate purpose. FTI enables data subjects to exercise their rights, including the rights of access and, as appropriate, the rectification, erasure or blocking of Personal data and keep data accurate, and not retain it any longer than necessary.

- Measures for ensuring limited data retention

FTI has a records retention policy that ensures records are retained for required and necessary periods of time; providing that records which are no longer useful are properly destroyed; and providing that records to be retained are stored methodically and economically.  FTI uses their reasonable and best efforts to prevent the premature destruction of Records. The organization must have processes to return data upon end of contract and destroy data using appropriate mechanisms upon Department of Defense (DoD) and National Institute of Standards and Technology (NIST) standards for all data bearing devices.

- Measures for ensuring accountability

FTI has a defined process to resolve complaints about privacy and its collection or use of personal information in compliance with the EU-US Privacy Shield Principles.  FTI has measures in place to ensure complaints are resolved within 1 month.   Unless otherwise dictated by local law, the exact number of days to comply with a request varies, depending on the month in which the request was made and is calculated based on the day the request is received plus one (regardless of whether the day is a working day or not) until the corresponding calendar date in the next month.

- Measures for allowing data portability and ensuring erasure

FTI receives requested Personal Data directly or provide access to a tool which allows the requestor to extract the information themselves using a self-service type model.

The Personal Data requested is required to be provided in a format and structure which is commonly used and machine-readable. The following machine-readable formats:

- CSV: (Comma separated values) a format that stores tabular data (numbers and text) in plain-text form;
- PDF: (Portable Document Format) a file format used mainly to represent documents such that layout will stay the same independent of the system environment;
- XML: (eXtensible Markup Language) a markup language that defines a set of rules for encoding documents in a format that can be both human and machine readable;
- JSON: (JavaScript Object Notation) a machine-readable data format derived from the JavaScript language used for representing simple data structures and associative arrays; or
- HTML: (HyperText Markup Language) the main markup language for displaying web pages and other information in a web browser.

FTI has a data erasure process in place to track and manage responses, and, as necessary, provide updates to the relevant regulatory authority and/or input into management reports.  The organization must verify the identity of the data subject before disclosing any personal information.  The organization should only refuse to comply with an erasure request if it is "manifestly unfounded or excessive" or, alternatively may elect to charge a "reasonable fee." The response is in written communication together with the documents containing the proper erasure of data.

**SCHEDULE C**

## <u>FTI CONSULTING CALIFORNIA DATA PROTECTION SCHEDULE</u>

This California Data Protection Schedule ("Schedule") forms part of the contract for services to which it is an attachment (the "Contract") between the client party identified in the Contract (the "Client") and the relevant FTI Consulting group entity identified in the Contract ("FTI"). FTI will be functioning as a service provider.

1.  Processing of Personal Information.
    In connection with FTI's provision of services to Client under the Contract, if FTI receives any personal information (as such term is defined under the California Consumer Privacy Act) from or on behalf of Customer, then FTI:

    (a) will only process such personal information for the purpose of providing the services;

    (b) will not retain, use, or disclose such personal information for any purpose other than to perform the services or outside of the direct business relationship between FTI and Client;

    (c) will not sell, rent, release, disclose, disseminate, make available, transfer or otherwise communicate such personal information to any third party for monetary or other valuable consideration; and

    (d) certifies that it understands the restrictions on its processing of such personal information as set forth in this sentence, and will comply with them.

FTI may disclose personal information to FTI's service providers in connection with such service providers providing services to FTI, and FTI may permit such service providers to process personal information as necessary for FTI to provide the services to Client.

24