Hearing Date and Time: **September 20, 2023 at 10:00 a.m. (prevailing Eastern Time)**
Objection Deadline:    **September 13, 2023 at 4:00 p.m. (prevailing Eastern Time)**

Michael J. Edelman, Esq.
William W. Thorsness, Esq.
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone:    (212) 407-7700
Facsimile:    (212) 407-7799

*Proposed Counsel to the MSNs 63695 and 63781 Debtors*
*and Debtors-in-Possession and Proposed Special Merger*
*and Acquisition and Aviation Financing Counsel for the*
*Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Voyager Aviation Holdings, LLC *et al.*, | Case No. 23-11177 (JPM) |
| Debtors.[1] | Jointly Administered |

## NOTICE OF MOTION OF VOYAGER AVIATION HOLDINGS, LLC AND OTHER PARTICIPATION ASSETS DEBTORS FOR ENTRY OF ORDER AUTHORIZING SUCH DEBTORS TO REDACT AND FILE UNDER SEAL CERTAIN COMMERCIALLY SENSITIVE INFORMATION CONTAINED IN RSA AMENDMENT TERM SHEET

PLEASE TAKE NOTICE that Voyager Aviation Holdings, LLC ("VAH"),

Voyager Aviation Management Ireland DAC ("*VAMI*"), Aetios Aviation Leasing 1 Limited

("*Aetios 1*"), Aetios Aviation Leasing 2 Limited ("*Aetios 2*"), Panamera Aviation Leasing XII

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A); Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652). The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

Designated Activity Company ("*Panamera XII*") and Panamera Aviation Leasing XIII Designated Activity Company ("*Panamera XIII*" and, collectively with Aetios 1, Aetios 2 and Panamera XII, the "*MSNs 63695 and 63781 Debtors*" and, together with VAH and VAMI, the "P.A. Debtors") filed their *Motion of Voyager Aviation Holdings, LLC and Other Participation Assets Debtors for Entry of Order Authorizing Such Debtors to Redact and File Under Seal Certain Commercially Sensitive Information Contained in RSA Amendment Term Sheet*, dated as of the date hereof (the "*Motion*"),[2] seeking entry of an order, pursuant to sections 107(b) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "*Bankruptcy Code*"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), Rule 9018-1 of the Local Bankruptcy Rules for the Southern District of New York (the "*Local Bankruptcy Rules*"), this Court's Chambers Rules for the Honorable Judge John P. Mastando III, U.S.B.J., and the General Orders and Guidance Created by COVID-19 of the Bankruptcy Court for the Southern District of New York, (i) authorizing the Debtors to redact and file under seal certain commercially sensitive information (the "*Redacted Information*") contained in the RSA Amendment Term Sheet (and future filings with the same Redacted Information); (ii) directing that the Redacted Information shall remain redacted and confidential and shall not be made available to any party other than as set forth in the Motion, and (iii) granting related relief.

PLEASE TAKE FURTHER NOTICE that a hearing has been scheduled to consider the Motion and the relief requested therein on September 20, 2023, at 10:00 a.m. (New York time) (the "*Hearing*"), or as soon thereafter as counsel may be heard, before the Honorable Judge John P. Mastando III, United States Bankruptcy Judge, at the United States Bankruptcy

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

VP/#62560048

Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "*Bankruptcy Court*").

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion (the "*Objections*") must be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a 3.5 inch disk, in portable document format (PDF), in accordance with the customary practices of the Bankruptcy Court and General Order M-399. All objections must be served in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court and General Order M-399 and in accordance with the Chamber Rules for the Honorable Judge John P. Mastando III, U.S.B.J., and on: (i) the Chambers of the Honorable Judge John P. Mastando III, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408; (ii) the attorneys for the P.A. Debtors, Vedder Price P.C., 1633 Broadway, 31st Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and William Thorsness, Esq.); (iii) the Office of the United States Trustee – NYO, Department of Justice, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004, Attn.: Annie Wells, Esq., and (iv) all entities that requested notice in this Chapter 11 case under Bankruptcy Rule 2002; so as to be actually received no later than September 13, 2023 at 4:00 p.m (New York time). Only those Objections that are timely filed, served and received will be considered by the Bankruptcy Court at the Hearing.

Dated:    August 30, 2023          **VEDDER PRICE P.C.**
         New York New York

*/s/ Michael J. Edelman*
Michael J. Edelman, Esq.
William W. Thorsness, Esq. (admitted pro hac vice)
1633 Broadway, 31st Floor
New York, NY  10019
Telephone:  (212) 407-7700
Facsimile:  (212) 407-7799
Email:  mjedelman@vedderprice.com
       wthorsness@vedderprice.com

*Proposed Counsel to the MSNs 63695 and 63781*
*Debtors and Debtors-in-Possession and Proposed*
*Special Merger and Acquisition and Aviation*
*Financing Counsel for the Debtors*

VP/#62560048

Hearing Date and Time:  September 20, 2023 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline:   September 13, 2023 at 4:00 p.m. (prevailing Eastern Time)

Michael J. Edelman, Esq.
William W. Thorsness, Esq.
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone:    (212) 407-7700
Facsimile:    (212) 407-7799

*Proposed Counsel to the MSNs 63695 and 63781 Debtors
and Debtors-in-Possession and Proposed Special Merger
and Acquisition and Aviation Financing Counsel for the
Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**Voyager Aviation Holdings, LLC** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11177 (JPM)<br><br>Jointly Administered |

## MOTION OF VOYAGER AVIATION HOLDINGS, LLC AND OTHER PARTICIPATION ASSETS DEBTORS FOR ENTRY OF ORDER AUTHORIZING SUCH DEBTORS TO REDACT AND FILE UNDER SEAL CERTAIN COMMERCIALLY SENSITIVE INFORMATION CONTAINED IN RSA AMENDMENT TERM SHEET

Voyager Aviation Holdings, LLC ("VAH"), Voyager Aviation Management Ireland DAC

("VAMI"), Aetios Aviation Leasing 1 Limited ("Aetios 1"), Aetios Aviation Leasing 2 Limited

("Aetios 2"), Panamera Aviation Leasing XII Designated Activity Company ("Panamera XII")

and Panamera Aviation Leasing XIII Designated Activity Company ("Panamera XIII" and,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A); Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652). The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

collectively with Aetios 1, Aetios 2 and Panamera XII, the "MSNs 63695 and 63781 Debtors" and,

together with VAH and VAMI, the "P.A. Debtors") respectfully represent as follows in support of

this motion (the "Motion"):

## BACKGROUND

1.      On July 27, 2023 (the "Petition Date"), the above referenced debtors and debtors in

possession (collectively, the "Debtors"), including the P.A. Debtors, each commenced a case under

chapter 11 of the Bankruptcy Code by filing a voluntary petition for relief in this Court (the

"Chapter 11 Cases").  The Chapter 11 Cases are jointly administered for procedural purposes only

pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11*

*Cases* [Docket No. 26] entered by the Court.

2.      The P.A. Debtors are authorized to continue operating their businesses and manage

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No request for the appointment of a trustee or examiner has been made in these cases, and

no official committee has yet been appointed or designated.

3.      Information regarding the P.A. Debtors' business, capital structure, and the

circumstances leading to the commencement of these Chapter 11 Cases is set forth in the

*Declaration of Robert A. Del Genio, Chief Restructuring Officer of Voyager Aviation Holdings,*

*LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day

Declaration").[2]

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day
Declaration.

*Southern District of New York*, dated January 31, 2012. This matter is a core proceeding within

the meaning of 28 U.S.C. § 157(b).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6.      By this Motion, pursuant to sections 105(a) and 107(b) of the Bankruptcy Code,

Bankruptcy Rule 9018, Rule 9018-1 of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), this Court's

Chambers Rules for the Honorable Judge John P. Mastando III, U.S.B.J., and the General Orders

and Guidance Created by COVID-19 of the Bankruptcy Court for the Southern District of New

York, the P.A. Debtors request entry of an order (i) authorizing the P.A. Debtors to redact and file

under seal certain commercially sensitive information (the "Redacted Information") contained in

that certain Amended and Restated RSA Amendment Term Sheet, dated as of August 24, 2023

(the "RSA Amendment Term Sheet"), a copy of which is attached hereto as Exhibit A, which is

identical to Exhibit A to the *Notice of Filing RSA Amendment Term Sheet* filed by the Debtors

concurrently with this Motion [ECF No. 127], (ii) directing that the Redacted Information set forth

in the RSA Anebdnebt Term Sheet (and future filings containing the same Redacted Information)

shall remain redacted and confidential and shall not be made available to any party other than

(a) the Court, (b) the U.S. Trustee, or (c) any other person or entity to the extent consented to by

the P.A. Debtors and the Purchaser (as defined herein), and (iii) granting related relief.

## BASIS FOR RELIEF

7.      Section 107(b) of the Bankruptcy Code is a codified exception to the general rule

of access and protects entities from potential harm caused by the disclosure of confidential

information. Specifically, section 107(b) provides, in relevant part:

>      (b)      On request of a party in interest, the bankruptcy court shall, and on the
>      bankruptcy court's own motion, the bankruptcy court may—

> (1)    protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

8.    Bankruptcy Rule 9018 and Local Rule 9018-1 establish the procedure by which a party in interest may obtain a protective order authorizing the filing of a document under seal pursuant to section 107(b) of the Bankruptcy Code. Bankruptcy Rule 9018 provides, in relevant part, that "[o]n motion or its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bank. P. 9018.

9.    Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 are designed to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003); *see also Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 28 (2d Cir. 1994) (noting that "[d]isclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to [the] ability to negotiate favorable promotion agreements . . . thereby giving [its] competitors an unfair advantage."

10.    Once the Court determines that a party in interest is seeking protection of information that falls within the purview of section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting interested party and has no discretion to deny the application." *In re MF Global, Inc.*, 2012 WL 3260393, at *2 (Bankr. S.D.N.Y. 2012) (citing to *Orion*, 21 F.3d at 27). Moreover, a court has broad authority to issue an order under Bankruptcy Rule 9018. *See, e.g., In re Global Crossing*, 295 B.R. at 724 ("When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad – any order which justice requires. The Court notes that the authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." (internal citations

omitted)); *In re MF Global*, 2012 WL 3260393, at *3 ("In cases where protection is required, however, the form of protection that must be granted is not commanded by the statute. The Court has discretion when deciding how to protect commercial information.").

11.    Courts have recognized the term "commercial information," as used in section 107(b) of the Bankruptcy Code, is broad. This Court has held that "commercial information" need not rise to the level of a trade secret to be protected by section 107(b); rather, and in contrast to Rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) does not require the moving party to demonstrate "good cause." *In re Orion Pictures*, 21 F.3d at 28. As this Court previously explained, "the commercial information that is entitled to protection under [Bankruptcy] Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors." *In re Global Crossing*, 295 B.R. at 725

12.    The P.A. Debtors submit that the Redacted Information should be kept confidential because such information constitutes "commercial information" within the meaning of section 107(b) of the Bankruptcy Code. Specifically, the Redacted Information currently sets forth an amount that is relevant to ongoing confidential commercial negotiations among (a) the P.A. Debtors, (b) Azorra Explorer Holdings Limited, as the purchaser of the Participation Assets (the "*Purchaser*"), (c) various noteholders, who are considering participating in such transaction and (d) AFIC, as the controlling party of the secured lenders, and, accordingly, the amount being redacted constitutes such type of "commercial information" that should be kept confidential. Given the nature of the Redacted Information, disclosure of such information would unfairly disadvantage the P.A. Debtors in their efforts to maximize the value of the Participation Assets.

13.    The P.A. Debtors have attached the full RSA Amendment Term Sheet (excluding the Redacted Information) and, accordingly, all parties in interest will be adequately informed of the contents of the RSA Amendment Term Sheet and will not be prejudiced by the redaction of the Redacted Information from the RSA Amendment Term Sheet (and in future filings to the

extend that such contain the exact same Redacted Information). And, the Proposed Order approving this Motion allows the P.A. Debtors to disclose the Redacted Information to the Court, the U.S. Trustee, and other parties-in-interest with the prior written consent of the P.A. Debtors and the Purchaser. Accordingly, the Court should approve the redaction of the Redacted Information as requested by this Motion.

## NO PREVIOUS REQUEST

14.    No prior application for the relief requested herein has been made by the P.A. Debtors to this or any other court.

## NOTICE

15.    The P.A. Debtors will provide notice of this Motion to (a) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (b) counsel to the Required Consenting Noteholders, Clifford Chance US LLP; (c) counsel to the Aircraft Facility Lenders; (d) counsel to the Indenture Trustee of the Secured Notes; (e) counsel to the Purchaser, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Pillsbury Winthrop Shaw Pittman LLP; (f) counsel to the Additional Consenting Noteholders (as defined in the RSA Amendment Term Sheet), Akin Gump Strauss Hauer & Feld LLP; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The P.A. Debtors respectfully submit that, in view of the facts and circumstances of the Chapter 11 Cases, such notice is sufficient, and no other or further notice need be provided.

WHEREFORE, the P.A. Debtors respectfully request that the Court enter the proposed

order annexed hereto as <u>Exhibit</u> <u>Z</u> granting the relief requested herein and such other and further

relief as the Court may deem just and appropriate.

Dated: August 30, 2023
      New York, New York

/s/ *Michael J. Edelman*
Michael J. Edelman, Esq.
William W. Thorsness, Esq.
VEDDER PRICE P.C.
1633 Broadway, 31st Floor
New York, NY 10019
Telephone:   (212) 407-7700
Facsimile:   (212) 407-7799
Email:       mjedelman@vedderprice.com
               wthorsness@vedderprice.com

*Proposed Counsel to the MSNs 63695 and 63781*
*Debtors and Debtors-in-Possession and Proposed*
*Special Merger and Acquisition and Aviation*
*Financing Counsel for the Debtors*

*Execution Version*

### Amended and Restated RSA Amendment Term Sheet

THIS TERM SHEET IS NOT AN OFFER OR A SOLICITATION OF AN OFFER WITH RESPECT TO ANY SECURITIES IN ANY JURISDICTION WHERE IT IS UNLAWFUL TO DO SO OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY.

THIS TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN AND OTHERWISE SATISFACTORY TO AZORRA, THE DEBTORS, AND THE CONSENTING NOTEHOLDERS. THE CLOSING OF ANY TRANSACTION WILL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH TRANSACTION DOCUMENTS. NO BINDING OBLIGATIONS WILL BE CREATED BY THIS TERM SHEET UNLESS AND UNTIL BINDING TRANSACTION DOCUMENTS ARE EXECUTED AND DELIVERED BY ALL APPLICABLE PARTIES.

This amended and restated RSA amendment term sheet (including all exhibits and schedules hereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof or the RSA, the "Term Sheet") amends and restates that certain RSA amendment term sheet, dated August 24, 2023, among the parties hereto. This Term Sheet sets forth the principal terms of a settlement (the "Settlement") among (i) Voyager Aviation Holdings, LLC and its affiliated debtors (collectively, the "Debtors" and together with their non-debtor affiliates, "Voyager") in the chapter 11 bankruptcy cases jointly administered under Case No. 23-11177 (JPM) (the "Chapter 11 Cases") currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")[1] and (ii) certain Secured Noteholders that were not Consenting Noteholders as of the Petition Date that have executed the revised RSA (the "Additional Consenting Noteholders"), to be effectuated pursuant to the Chapter 11 Cases and the Azorra Transaction (subject to higher or otherwise better bids pursuant to the Bidding Procedures (as defined below)), on the terms and conditions set forth in the Purchase Agreement, the Participation Agreement, the RSA, and the Plan, in each case as amended in accordance with this Term Sheet.

| Settlement Overview | |
|---|---|
| **RSA Amendment** | Effective upon the date (the "Amendment Effective Date") on which all Secured Noteholders represented by Akin Gump Strauss Hauer & Feld LLP ("Akin") have submitted signature pages to an amended and restated RSA, |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Declaration of Robert A. Del Genio, Chief Restructuring Officer of Voyager Aviation Holdings, LLC, in Support of Chapter 11 Petitions and First Day Motions [Docket No. 16] and the exhibits thereto.

| | which shall be in form and substance acceptable to the Additional Consenting Noteholders, the RSA and the exhibits thereto will be amended to implement the provisions of this Term Sheet, and the Additional Consenting Noteholders will be Consenting Noteholders under the RSA.

The definition of "Required Consenting Noteholders" under the RSA shall be amended to mean at any relevant time, (i) (X) Consenting Original Noteholders holding greater than 50.0% of the aggregate outstanding principal amount of the Secured Notes held by the Consenting Original Noteholders (the "<u>Required Original Consenting Noteholders</u>"), and (II) Additional Consenting Noteholders holding greater than 66 2/3% of the aggregate outstanding principal amount of the Secured Notes held by the Additional Consenting Noteholders (the "<u>Required Additional Consenting Noteholders,</u>" and together with the Required Original Consenting Noteholders, the "<u>Required Consenting Noteholders</u>").

The Required Additional Consenting Noteholders and the Required Original Consenting Noteholders will have the right to terminate the RSA as to the Additional Consenting Noteholders or Original Consenting Noteholders, as applicable, for the same termination events.

Akin's reasonable and documented fees from prior to, on or after the Petition Date shall be paid in accordance with the terms of the RSA and the final order approving the Debtors' use of cash collateral on the same terms as counsel for the Original Consenting Noteholders.

The Additional Consenting Noteholders will agree in the RSA to support the Plan, the sale process contemplated by this Term Sheet, the Settlement, and to grant customary mutual releases to the Purchaser, the other Consenting Noteholders and Consenting Equityholders, Voyager, and each of their respective related parties. |
| **Additional Marketing Process** | The Debtors will seek Bankruptcy Court approval of, and implement, additional re-marketing procedures, (such procedures as approved by an order of the Bankruptcy Court, the "<u>Bidding Procedures</u>"), relating to the sale of their assets, as follows:

   (i)    The Debtors will remarket their entire available fleet of aircraft (including the 14 aircraft and related assets constituting the Target Assets under existing Purchase Agreement (the "<u>Original Sale Assets</u>")) and, if the Debtors are unable to complete the sale of those two aircraft referred to as MSNs 1554 and 1635 and related assets (the "<u>Additional Sale Assets</u>") pursuant to the separate Aircraft Sale and Purchase Agreement dated March 15, 2023 (the "<u>MSNs 1554 and 1635 Sale Agreement</u>") on or before August 31, 2023, then also including the Additional Sale Assets, but excluding the Participation Assets unless the Participation |

Agreement is terminated in accordance with its terms (collectively, the "Sale Assets").

(ii)    Notice of the Bidding Procedures and sale will be sent to all 64 parties originally solicited by Greenhill and certain additional potential bidders identified by the Additional Consenting Noteholders that were not previously contacted by Greenhill and agreed to by the Debtors (such agreement not to be unreasonably withheld).

(iii)    Azorra (or Purchaser) will serve as the stalking horse bidder for Original Sale Assets and the Additional Sale Assets (the "Stalking Horse Bidder"), together with the Additional Sale Assets to the extent set forth in clause (iv) below, subject to the Purchaser Protections as set forth in the Purchase Agreement, as modified and supplemented hereby.

(iv)    If the Debtors are unable to complete the sale of the Additional Sale Assets pursuant to the MSNs 1554 and 1635 Sale Agreement on or before August 31, 2023, then the Purchase Agreement will be amended to (A) provide that Azorra is acting as the stalking horse bidder for both the Original Sale Assets and the Additional Sale Assets, with the purchase of the Additional Sale Assets to be effected on the same terms and conditions, including ECD, as currently in effect for the Original Sale Assets, (B) increase the Aggregate Stated Purchase price by $58 million (the "Additional Sale Assets Purchase Price") to account for the inclusion of the Additional Sale Assets, (C) increase the Purchaser Protections by $1,740,000, and (D) make any other conforming changes reasonably necessary or appropriate to effectuate the foregoing. Notwithstanding anything to the contrary, Azorra's obligations pursuant to this Term Sheet shall be subject to the condition subsequent that the sale of the Additional Sale Assets pursuant to the MSNs 1554 and 1635 Sale Agreement is not completed on or before August 31, 2023.

(v)    Bidders can submit bids on all of the Sale Assets or any portion (including without limitation, one or both of the Additional Sale Assets), but for a bid or bids to be considered higher or better than the Purchase Agreement, the bids must individually or collectively be in an aggregate amount that results in net aggregate proceeds to the Debtors' estates that exceed the net aggregate proceeds to the Debtors' estates from Azorra's bid *plus* the Purchaser Protections (as increased as described in clause (iv) above).

3

| | |
|---|---|
| | (vi) Qualified bids shall at a minimum not have any financing contingency, demonstrate ability to close the subject transaction, and, other than with respect to the Stalking Horse Bidder, be accompanied by a good faith deposit of 10% of the proposed purchase price, exclusive of purchase price attributable to assumed liabilities ("Qualified Bids").<br><br>(vii) The bid deadline for Qualified Bids shall be the business day 4 days before the Sale Hearing.<br><br>(viii) An auction, if necessary, will be held 2 days before the Sale Hearing.<br><br>(ix) A hearing for entry of an order approving the purchase agreement(s) with the successful bidder(s) (the "Sale Hearing") will be held no earlier than September 25, 2023 and no later than September 27, 2023, subject to availability of the Bankruptcy Court.<br><br>(x) The remarketing process shall commence as soon as reasonably practicable.<br><br>(xi) The Debtors will also entertain any and all unsolicited bids during the remarketing period.<br><br>(xii) The Debtors will provide copies of the bids received pursuant to the Bidding Procedures to the Consenting Noteholders' advisors on a "professional eyes only" basis.<br><br>(xiii) The Consenting Noteholders shall be consultation parties under the Bidding Procedures (except any noteholder that becomes a bidder in the sale). |
| **Purchaser Protections Hearing** | The hearing to approve the Purchaser Protections will be adjourned to August 31, 2023 (unless the Court permits an earlier hearing). The Consenting Noteholders shall support approval of the Purchaser Protections. |
| **Additional Sale Assets Purchaser Protections** | If the Debtors are unable to complete the sale of the Additional Sale Assets pursuant to the MSNs 1554 and 1635 Sale Agreement on or before August 31, 2023, then Azorra shall be entitled to a break-up fee on the Additional Sale Assets on the same terms as set forth in the Purchase Agreement in an amount equal to $1,740,000; provided that such fee shall not be payable (and there shall be no default under or other alteration to the Purchase Agreement, other than a reduction in purchase price) in the event the Debtors are unable to sell an Additional Sale Asset due to the exercise of remedies by the secured lenders with respect to such asset. |

| | |
|---|---|
| **Sale Motion** | The Sale Motion will be amended to include approval of the Bidding Procedures, which shall be in form and substance reasonably acceptable to Azorra, the Debtors, and the Consenting Noteholders.  The Debtors will adjourn the hearing on approval of the sale notice and objection procedures [ECF 48] and seek to have a hearing for approval of the Bidding Procedures (and related notices and objection procedures) on or around August 31, 2023.  If the Debtors, in the exercise of their fiduciary duties, determine that Azorra is the highest or otherwise best bidder for the Sale Assets and seek approval of the Sale Motion, and no other Qualified Bid would provide greater aggregate net proceeds to the Secured Noteholders than Azorra's bid, the Consenting Noteholders shall support approval of the Sale Motion on the timeline set forth herein, subject to their consultation rights with respect to any bids submitted pursuant to the Bidding Procedures. |
| **363 Sale Order** | If the Debtors, in the exercise of their fiduciary duties, determine that Azorra is the highest or otherwise best bidder for the Sale Assets in accordance with the Bidding Procedures, the Debtors will seek (and, unless another Qualified Bid would provide greater aggregate net proceeds to the Secured Noteholders than Azorra's bid, the Consenting Noteholders shall support) entry of an order in form and substance acceptable to the Debtors, Azorra, and the Required Consenting Noteholders approving the sale to Azorra.<br><br>If another bidder (or bidders) is the successful bidder (or bidders) in accordance with the Bidding Procedures, the Debtors will seek entry of an order in form and substance acceptable to the Debtors, the successful bidder(s) and the Required Consenting Noteholders approving the sale to the successful bidder(s).<br><br>In any event, the order approving any sale(s) shall provide that upon consummation of the sale(s) the Debtors shall distribute to the holders of the Secured Notes substantially all of the cash proceeds from such sale(s) net of the amounts required to satisfy the Aircraft Financing Facility Claims and General Unsecured Claims of the applicable Aircraft Selling Debtors and sufficient amounts to fund appropriate reserves, a wind-down budget (including operating the business during the transition period prior to the completion of novations) and the administrative expenses of the Chapter 11 Cases to be agreed upon by the Debtors and the Consenting Noteholders. |
| **Chapter 11 Plan** | The Additional Consenting Noteholders will support the Plan in accordance with the treatment currently provided as may be amended in accordance with the terms hereof, which Plan may (A) provide up to $900,000 in aggregate recovery to unsecured creditors of Debtors that are not Aircraft Selling Debtors (including convenience and trade claims but excluding the deficiency claims of the Secured Notes) and (B) reflect that the Sale may be consummated pursuant to the 363 Sale Order. |

| Amendment to Participation Agreement | The Participation Agreement shall be amended (which amendment shall be in form and substance reasonably acceptable to the Debtors, Azorra and the Required Consenting Noteholders) to allow holders of the Secured Notes to elect by September 14, 2023 (such electing holders, the "<u>Participating Noteholders</u>"[2] and, together with Azorra, the "<u>Participants</u>," and such date, the "<u>Noteholder Decision Date</u>"), to participate on a *pro rata* basis in the Participation Agreement for up to 49% of Azorra's interests, rights, and obligations under the Participation Agreement (the "<u>Secured Notes Participation Rights</u>"), with over-subscription rights for the Participating Noteholders to the extent the 49% interest is undersubscribed. Such participation by Participating Noteholders shall be on the same economic terms and conditions as Azorra, including, without limitation, with respect to (i) advancing or reimbursing Azorra if already paid (or Azorra agrees to front), its ratable portion of all out-of-pocket expenses, obligations, and payments actually incurred by or to be incurred by Azorra (and/or the other Participants) in connection with the Participation Agreement and the "Participation Assets" (as defined in the Participation Agreement) (including Direction Costs (as defined in the Participation Agreement) and any amounts paid to AFIC under the Participation Agreement) and its ratable portion of any indemnity liability or any other obligations under the Participation Agreement (whensoever incurred) (collectively, the "<u>Participation Expenses</u>"), which Participation Expenses, for the avoidance of doubt, shall not include fees and expenses of Azorra incurred in connection with the negotiation of this Term Sheet, the Purchase Agreement, the Participation Agreement, or any other Transaction Documents (as defined in the RSA) and (ii) receiving their ratable portion of any liquidated damages payable under the Participation Agreement, which amendment also shall include associated customary and reasonable terms implementing such Secured Notes Participation Rights; *provided* that all decisions, elections, directions, and controls regarding the Participation Agreement and the Participation Assets, including, without limitation, all aspects of the strategy, pursuit, non-pursuit, settlement or termination of any Participation Assets and all discussions with AFIC with respect to the Participation Assets (including the terms of any AFIC Consent Agreement or other agreement with the Finance Parties (as defined in the Participation Agreement) relating to the Participation Assets) made or coordinated by Azorra under the Participation Agreement shall be under the sole and exclusive control of Azorra, without prejudice to the Participating Noteholder Opt-Out Rights (as defined below), and all Participation Expenses shall be incurred in a commercially reasonable manner. Any Participating Noteholder that fails to advance or reimburse Azorra any Participation Expenses in breach of the Participation Agreement, as |

---

[2] All references in this section to "Participating Noteholders" shall be solely in their capacity as such and not in their capacity as holders of the Secured Notes.

amended, shall forfeit any participation or other interests in the Participation Agreement, the Participation Assets and any proceeds thereof.

Subject to the immediately succeeding paragraph, the Participation Agreement amendment will provide the Participating Noteholders with reasonable protections for transactions of this type to ensure that, except as otherwise set forth herein, (i) the Participating Noteholders do not receive any disparate or disproportionate treatment in respect of their economic interests, rights or obligations under the Participation Agreement as compared to Azorra (in its capacity as Participant (as defined in the Participation Agreement)) and (ii) Azorra otherwise does not take any action that (x) adversely affects the interests, rights or obligations of the Participating Noteholders to a greater extent (relative to their respective shares of the Participation Interests) than those of Azorra (in its capacity as Participant) or (y) materially benefits the interests, rights or obligations of Azorra (in its capacity as Participant) to a greater extent (relative to their respective shares of the Participation Interests) than those of the Participating Noteholders.

For the avoidance of doubt, without prejudice to the rights of the Participating Noteholders to exercise the Participating Noteholder Opt-Out Rights, the Secured Notes Participation Rights will be limited to a share of any recoveries and other "economic" rights, and the Participation Agreement amendment will provide that (a) Azorra retains the exclusive right to provide all Directions under and as defined in the Participation Agreement and to otherwise determine and make all decisions with respect to if and how to pursue any recovery on the Participation Assets (as defined in the Participation Agreement) and to exercise all rights (including termination rights) and remedies under the Participation Agreement, and (b) Azorra and its affiliates shall have no liability or duty to any party that participates in the Secured Notes Participation Rights in relation to the Participation Agreement or Participation Assets (other than liability for a breach of the Participation Agreement).

Notwithstanding anything to the contrary herein, the Participation Agreement shall be amended to provide that if the AFIC Consent Agreement (as defined in the Participation Agreement) is executed after the Noteholder Decision Date and requires Azorra or all Participants to pay principal and interest in respect of the Secured Facilities (the "P&I Expenses") in excess of ███████ (the "AFIC Cap") in the aggregate, any Participating Noteholder may (but shall not be required to), within three (3) business days of receiving notification thereof, elect to be an "Initial Partial Opt-Out Noteholder" or an "Initial Full Opt-Out Noteholder" (the "Initial Participating Noteholder Opt-Out Right").

Each Initial Partial Opt-Out Noteholder shall (i) fund its pro rata share of the AFIC Cap in respect of such P&I Expenses, resulting in an adjustment of its Pro Rata Share (as defined below) of the Participation Interests and (ii) otherwise remain a Participant for all other purposes. Each Initial Full Opt-Out Noteholder shall not be obligated to fund any portion of such P&I Expenses or any Participation Expenses incurred after the date it becomes an Initial Full Opt-Out Noteholder. Each Initial Full Opt-Out Noteholder's recovery under the Participation Agreement shall be capped at the amount of Participation Expenses funded by such Initial Full Opt-Out Noteholder.

In addition, if after execution of the AFIC Consent Agreement, Azorra (on reasonable notice to the other Participants) subsequently elects or agrees on behalf of all Participants to fund principal and interest in respect of the Secured Facilities, that would cause the aggregate P&I Expenses to be in excess of the AFIC Cap but less than $66.3 million (the "Second AFIC Cap"), then each Participating Noteholder other than a Participating Noteholder that exercised the Initial Participating Noteholder Opt-Out Right, within five (5) business days of receiving notification thereof, may elect to be a "Subsequent Full Opt-Out Noteholder" (the "Subsequent Participating Noteholder Full Opt-Out Right"). Each Subsequent Full Opt-Out Noteholder shall fund its pro rata share of the AFIC Cap in respect of such P&I Expenses but shall not be obligated to fund any additional P&I Expenses. Each Subsequent Full Opt-Out Noteholder's recovery under the Participation Agreement shall be capped at the amount of Participation Expenses funded by such Subsequent Full Opt-Out Noteholder.

In addition, if after execution of the AFIC Consent Agreement, Azorra (on reasonable notice to the other Participants) subsequently elects or agrees on behalf of all Participants to fund principal and interest in respect of the Secured Facilities, that would cause the aggregate P&I Expenses to exceed the Second AFIC Cap, then each Participating Noteholder other than a Participating Noteholder that exercised the Initial Participating Noteholder Opt-Out Right or Subsequent Participating Noteholder Full Opt-Out Right, within five (5) business days of receiving notification thereof, may elect to be a "Subsequent Partial Opt-Out Noteholder" (the "Subsequent Participating Noteholder Partial Opt-Out Right, and together with the Subsequent Participating Noteholder Full Opt-Out Right and the Initial Participating Noteholder Opt-Out Right, the "Participating Noteholder Opt-Out Rights"). Each Subsequent Partial Opt-Out Noteholder shall (i) fund its pro rata share of the Second AFIC Cap in respect of such P&I Expenses but shall not be obligated to fund any additional P&I Expenses, resulting in an adjustment of its Pro Rata Share of the Participation Interests, and (ii) remain a Participant for all other purposes.

Each Participating Noteholder that exercises any Participating Noteholder Opt-Out Right shall remain responsible for advancing or reimbursing

8

Azorra for its Pro Rata Share of any Participation Expenses (other than the applicable P&I Expenses as set forth above) incurred on or prior to the date such Participating Noteholder exercises its Participating Noteholder Opt-Out Right.

"Pro Rata Share" means, with respect to a Participant, its pro rata share of the Participation Interests, calculated based on the amount of Participation Expenses funded by such Participant relative to the aggregate amount of Participation Expenses funded by all Participants; *provided*, that for purposes of this calculation all P&I Expenses in excess of the Second AFIC Cap shall be multiplied by 150%.

The Participation Agreement shall be amended to provide that in the event a Participating Noteholder exercises its Participating Noteholder Opt-Out Right, the other Participants shall fund such P&I Expenses that would have been paid by such Participating Noteholder but for the exercise of the Participating Noteholder Opt-Out Right (the "P&I Expenses Shortfall") on a pro rata basis; *provided*, that no Participating Noteholder shall be obligated to fund any such P&I Expenses Shortfall on account of amounts in excess of the Second AFIC Cap, and for the avoidance of doubt no Participating Noteholder shall cease to be a Participant as a result of not funding any P&I Expenses Shortfall on account of amounts in excess of the Second AFIC Cap.

The Participation Agreement shall be amended to provide that in the event that a Participant (other than a Participating Noteholder which has prior to such failure duly exercised its Participating Noteholder Opt-Out Right) fails to fund its pro rata share of any Participation Expenses (a "Defaulting Participant"), the other Participants shall fund such Defaulting Participant's share on a pro rata basis.

Notwithstanding the foregoing, the Participation Agreement shall provide that in the event that the AFIC Consent Agreement has not been entered into on or prior to the Termination Date (as defined in the Participation Agreement) and the Participation Agreement terminates in accordance with its terms, each of the Participating Noteholders shall be responsible for its pro rata share of all Participation Expenses incurred on or prior to the date of termination of the Participation Agreement.

The Participation Agreement shall be amended to provide that any extension of the Termination Date beyond December 31, 2023 shall require the consent of all Participating Noteholders (such consent not to be unreasonably withheld, conditioned, or delayed).

To the extent that prior to the termination of the Participation Agreement any Participating Noteholder, Azorra or any of their respective affiliates

9

acquires all or a portion of the Secured Facilities in respect of the Participation Aircraft, directly, by participation or otherwise, each such other party shall have the right to purchase its pro rata portion of such debt on the same economic and other material terms and conditions. Notwithstanding the foregoing, any payments made on account of such Secured Facilities by or on behalf of the borrower of such Secured Facilities pursuant to the terms of the Participation Agreement shall be governed by the terms of the Participation Agreement regarding the respective of rights and obligations of Azorra and the Participating Noteholders in respect of Participation Expenses (including, if applicable, the Participating Noteholder Opt-Out Right).

The Secured Notes Participation Rights shall be immediately effective upon entry of an order assuming the amended Participation Agreement; *provided* that for the avoidance of doubt, the Participation Agreement may be terminated as to all parties in accordance with its terms including based on the fact that Azorra is not the successful bidder for the Sale Assets.

Upon an agreement in principle on the terms hereof and prior to entry into the Participation Agreement, the Additional Consenting Noteholders shall have the right to enter into a common interest agreement with the Debtors and Azorra on the same terms as the common interest agreement entered into between the Debtors and Azorra with respect to matters subject to the Participation Agreement.

As soon as reasonably practicable after execution of this Term Sheet, Azorra shall provide the Consenting Noteholders with a proposed, non-binding and illustrative budget in respect of payments anticipated to be made to third parties pursuant to the Participation Agreement and a non-binding, good faith accounting of known Participation Expenses to date. Azorra and the Debtors, as applicable, shall, upon the reasonable request of any Consenting Noteholder or Participating Noteholder, as applicable, otherwise cooperate and share information regarding the Participation Assets and the Participation Agreement (including information regarding the status and proposed terms of the AFIC Consent Agreement) with the Consenting Noteholders and Participating Noteholders, as applicable.

The Participation Agreement will be amended to provide for an expense reimbursement to the Participant and the Participating Noteholders for Participation Expenses that have been incurred or funded under the terms of the Participation Agreement, including any P&I Expenses, in the event the Participation Agreement is terminated or the sale of the Participation Interests as set forth therein is not consummated, in each case based on the fact that Azorra is not the successful bidder for the Sale Assets, provided that the maximum aggregate amount payable for such expense reimbursement (excluding amounts incurred or funded for any P&I

10

|  | Expenses) plus the Liquidated Damages (as defined in the Participation Agreement) (if payable thereunder) shall be capped at $2.5 million.<br><br>In the event the Participation Agreement is terminated, the Debtors and the Consenting Noteholders shall work in good faith to implement an alternative thereto, including undertaking an auction process for the sale of the Participation Assets subject of the Participation Agreement and/or for the financing thereof.<br><br>Except as described above, the terms of the Participation Agreement shall remain unmodified.<br><br>The motion to assume the Participation Agreement will be adjourned to a hearing on or around August 31, 2023, with the order approving the assumption being amended to be consistent with the terms hereof and otherwise reasonably acceptable to the Debtors, Azorra and the Required Consenting Noteholders.  The Consenting Noteholders shall support approval of the motion to assume the Participation Agreement (as revised consistent with the terms hereof). |
|---|---|

[Signature Pages Follow]

IN WITNESS WHEREOF, the Parties have executed this Term Sheet on this 24th day of August, 2023

*/s/ Samuel A. Khalil*

Samuel A. Khalil, Esq.
Lauren C. Doyle, Esq.
Brian Kinney, Esq.
Edward R. Linden, Esq.
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone:      (212) 530-5000
Facsimile:      (212) 530-5219
Email:          skhalil@milbank.com
                ldoyle@milbank.com
                bkinney@milbank.com
                elinden@milbank.com

*Proposed Counsel to all Debtors and Debtors in Possession other than the Participation Debtors*

*/s/ Michael J. Edelman*

Cameron A. Gee, Esq.
Michael J. Edelman, Esq.
William W. Thorsness (*pro hac vice pending*)
**VEDDER PRICE P.C.**
1633 Broadway, 31st Floor
New York, New York 10019
Telephone:      (212) 407-7700
Facsimile:      (212) 407-7799
Email:          cgee@vedderprice.com
                mjedelman@vedderprice.com
                wthorsness@vedderprice.com

*Proposed Counsel to the Participation Debtors*

**AZORRA EXPLORER HOLDINGS LIMITED**, as the Purchaser and a Participant

By: *Ron Baur*

Name: Ron Baur

Title:   Director

**AZORRA AVIATION HOLDINGS, LLC**, solely in its capacity as guarantor under the Purchase Agreement and the Participation Agreement

By: *Ken Hoffman*

Name: Ken Hoffman

Title:   Chief Legal Officer

[*Signature Page to RSA Amendment Term Sheet*]

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:  /s/ *Phillip C. Dublin*
Philip C. Dublin
Jason P. Rubin
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:    (212) 872-1002
pdublin@akingump.com
jrubin@akingump.com

*Counsel to the Additional Consenting Noteholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Voyager Aviation Holdings, LLC *et al.*, | ) | Case No. 23-11177 (JPM) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**ORDER AUTHORIZING P.A. DEBTORS TO REDACT AND FILE**
**UNDER SEAL CERTAIN COMMERCIALLY SENSITIVE**
**INFORMATION CONTAINED IN RSA AMENDMENT TERM SHEET**

Upon the motion (the "Motion")[2] of the P.A. Debtors for entry of an order, pursuant to

sections 107(b) and 105(a) of the Bankruptcy Code, Rule 9018 of the Bankruptcy Rules, and Rule

9018-1 of the Local Rules, this Court's Chambers Rules, and the General Orders and Guidance

Created by COVID-19 of the Bankruptcy Court for the Southern District of New York, authorizing

the P.A. Debtors to redact and file under seal certain commercially sensitive information (the

"Redacted Information") contained in the RSA Amendment Term Sheet; and the Court having

reviewed the Motion and having heard the statements of counsel regarding the relief requested in

the Motion at a hearing before the Court, if any (the "Hearing"); and the Court having found that

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A);   Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652).  The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

[2]   Capitalized terms used but not otherwise defined herein have the respective meanings ascribed to such terms in the Motion.

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); (c) venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the Motion and the Hearing was sufficient under the circumstances and the Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the P.A. Debtors' estates, their creditors, and other parties in interest; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted and approved as set forth herein.

2.      Pursuant to Sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Bankruptcy Rule 9018-1, the P.A. Debtors are authorized to file under seal the RSA Term Sheet Amendment (and future further filings containing the same Redacted Information), with the Redacted Information redacted.

3.      The P.A. Debtors shall submit an unredacted copy of the RSA Amendment Term Sheet (and any future further filings containing the same Redacted Information), to the Clerk of this Court under seal in an envelope, clearly indicating that the same has been filed under seal by the United States Bankruptcy Court for the Southern District of New York.

4.      The Redacted Information shall remain redacted and confidential and shall not be made available to any party other than (i) the Court, (ii) the U.S. Trustee, or (iii) any other person or entity, to the extent consented to by the P.A. Debtors and the Purchaser.

5.      The Redacted Information may not be filed on the public docket and shall remain under seal until the closing of these chapter 11 cases or entry of the final decree.  Upon closure, the Clerk's Office is directed to release any hard copies or electronic storage device of the RSA Amendment Term Sheet and any future further filings containing the same Redacted Information, for disposal.

6.      All information redacted pursuant to this Order shall remain so absent further order of this Court.

7.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      Nothing in this Order shall restrict in any way the right of any party in interest, or the U.S. Trustee, to seek relief from this Court to unredact any part of the RSA Amendment Term Sheet and any future filings with the same Redacted Information redacted or to seek different procedures relating to the Redacted Information.

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this order.

New York, New York
Dated: _____, 2023


_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE