**ALLEN & OVERY LLP**
Daniel J. Guyder
Christopher R. Newcomb
Joseph Badtke-Berkow
Jacob R. Herz
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Attorneys for the Aircraft Finance*
*Insurance Consortium Insurers*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Voyager Aviation Holdings, LLC *et al.*, | Case No. 23-11177 (JPM) |
| Debtors.[1] | (Jointly Administered) |
| | Related [Dkt. Nos. 51, 52] |

**AIRCRAFT FINANCE INSURANCE CONSORTIUM INSURERS' OBJECTION
TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING (A) THE
DISCLOSURE STATEMENT AND (B) SOLICITATION AND NOTICE MATERIALS;
(II) ESTABLISHING (A) SOLICITATION AND VOTING PROCEDURES, (B) PROCEDURES
FOR ALLOWING CLAIMS FOR VOTING PURPOSES AND (C) NOTICE AND OBJECTION
PROCEDURES; AND (III) SCHEDULING CONFIRMATION HEARING**

---

[1] The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Voyager Aviation Holdings, LLC (8601); A330 MSN 1432 Limited (N/A); A330 MSN 1579 Limited (N/A); Aetios Aviation Leasing 1 Limited (N/A); Aetios Aviation Leasing 2 Limited (N/A); Cayenne Aviation LLC (9861); Cayenne Aviation MSN 1123 Limited (N/A); Cayenne Aviation MSN 1135 Limited (N/A); DPM Investment LLC (5087); Intrepid Aviation Leasing, LLC (N/A); N116NT Trust (N/A); Panamera Aviation Leasing IV Limited (N/A); Panamera Aviation Leasing VI Limited (N/A); Panamera Aviation Leasing XI Limited (N/A); Panamera Aviation Leasing XII Designated Activity Company (N/A); Panamera Aviation Leasing XIII Designated Activity Company (N/A); Voyager Aircraft Leasing, LLC (2925); Voyager Aviation Aircraft Leasing, LLC (3865); Voyager Aviation Management Ireland Designated Activity Company (N/A); and Voyager Finance Co. (9652). The service address for each of the Debtors in these cases is 301 Tresser Boulevard, Suite 602, Stamford, CT 06901.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ............................................................................................. 4

      A.   The Participation Aircraft and the Secured Facilities ................................................. 4

      B.   Non-Payment Insurance Underwritten by the AFIC Insurers ................................... 5

      C.   The Participation Agreement and the Participation Agreement Motion ..................... 6

      D.   The Plan and Disclosure Statement .......................................................................... 7

OBJECTION ............................................................................................................................ 8

   I.   The Court Should Not Approve the Disclosure Statement Because it Fails to Provide
       Adequate Information ..................................................................................................... 8

      A.   Disclosure is Inadequate With Respect to the Treatment of Class 3B Claims ............ 8

      B.   Disclosure is Inadequate With Respect to the Treatment of Class 6b and 6c
          Claims ................................................................................................................... 11

      C.   The Debtors Should Provide Adequate Disclosure of the "Per Plan" Approach
          Embodied in the Plan ........................................................................................... 12

      D.   The Debtors' Description of the Participation Agreement is Flawed and
          Inadequate ............................................................................................................. 14

      E.   The Debtors Have Not Provided a Liquidation Analysis ........................................ 14

RESERVATION OF RIGHTS ............................................................................................... 15

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 85 Flatbush RHO Mezz LLC*,
    22-CV-6233 (CS), 2022 WL 11820407 (S.D.N.Y. Oct. 20, 2022) .........................................13

*In re Crowthers McCall Pattern, Inc.*,
    120 B.R. 279 (Bankr. S.D.N.Y. 1990) ...............................................................................15

*In re Ferretti*,
    128 B.R. 16 (Bankr. D.N.H. 1991) .......................................................................................9

*In re Galerie Des Monnaies of Geneva, Ltd.*,
    55 B.R. 253 (Bankr. S.D.N.Y. 1985) ...................................................................................8

*Kunica v. St. Jean Financial, Inc.*,
    233 B.R. 46 (S.D.N.Y. 1999) ...............................................................................................8

*In re McLean Indus., Inc.*,
    87 B.R. 830 (Bankr. S.D.N.Y. 1987) ...................................................................................9

*In re NESV Ice, LLC*,
    2023 WL 2278603 (Bankr. D. Mass. Feb. 28, 2023) .........................................................12

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988) .................................................................................................8

**Statutes**

11 U.S.C. § 1125 .............................................................................................................................3

11 U.S.C. § 1125(a) ........................................................................................................................9

11 U.S.C. § 1129(a)(7) ..................................................................................................................14

11 U.S.C. § 1129(a)(10) ..........................................................................................................12, 13

11 U.S.C. § 1129(b) ......................................................................................................... 2, 7, 9, 10

The Aircraft Finance Insurance Consortium insurers (the "AFIC Insurers"), by and through their undersigned counsel, hereby submit their objection (this "Objection") to the *Debtors' Motion for Entry of an Order, (I) Approving (A) The Disclosure Statement and (B) Solicitation and Notice Materials; (II) Establishing (A) Solicitation and Voting Procedures, (B) Procedures for Allowing Claims for Voting Purposes and (C) Notice and Objection Procedures; and (III) Scheduling Confirmation Hearing* [Dkt. No. 52] (the "Motion") and respectfully represent as follows.

## PRELIMINARY STATEMENT

1. The AFIC Insurers are the controlling stakeholders in respect of certain senior secured facilities by and among the Secured Parties (as defined below) and the Participation Debtors[1] that are borrowers, guarantors and/or security providers with respect to the obligations thereunder in excess of $125.7 million, which obligations are secured by first priority security interests on all of the "Participation Assets."

2. The Plan as proposed contemplates that the Debtors have assumed or will assume the Participation Agreement, and that the AFIC Insurers have consented or will consent to such assumption ***and*** their proposed treatment under the Plan. The AFIC Insurers, however, do not consent.

3. Under the Participation Agreement, the Participation Debtors propose to transfer to third-party Azorra Explorer Holdings Limited ("Azorra"), the purchaser of the aircraft assets owned by the Debtors other than the Participation Debtors, the so-called "Participation Interests" in the Participation Assets in return for *de minimis* upfront consideration and an agreement to share proceeds of the Participation Assets with the Participation Debtors following satisfaction in full of

---

[1] Capitalized terms that are not defined herein have the meanings given to them in the Motion and the Disclosure Statement, as applicable.

the obligations under the senior secured facilities owing to the Secured Parties. For its part, the Participation Agreement provides Azorra an option—without any obligation—to fund debt service payments in respect of the obligations under the senior secured facilities and to direct and fund litigations to recover insurance proceeds in relation to the total loss of certain of the Participation Assets in Russia following the onset of the Ukraine war.

4. So strong was their apparent belief that a consensual arrangement based on the Participation Agreement would be reached that the Debtors failed to formulate any alternative treatment under the Plan if the AFIC Insurers do not consent. In such case, the Plan states only that the AFIC Insurers' claims classified in Class 3b will "receive treatment that satisfies section 1129(b) of the Bankruptcy Code." This description of the treatment of the Secured Parties' Secured Claims is woefully deficient and by no means adequate for purposes of the Disclosure Statement. The AFIC Insurers do not consent to the proposed assumption of the Participation Agreement, a prerequisite to implementing the Plan on a consensual basis, as acknowledged by the Debtors. Without adequate information on the proposed treatment of their claims where the AFIC Insurers do not consent to the Participation Agreement, the Secured Parties cannot make any determination—let alone an informed determination—about how their claims will be treated, as section 1129(b) provides for a number of different potential treatments. The Disclosure Statement and Plan provide no additional information beyond citation to the statute to fill the void left by the Plan. Further, the Disclosure Statement fails to identify the means by which the to-be-determined treatment of the Secured Parties' claims will be provided, including a source of funding for any required payments on account of their Secured Claims. This is especially problematic given the Participation Debtors' admitted lack of liquidity or other resources that would be available to provide any of the treatments that section 1129(b) requires for non-consenting secured creditors, suggesting that there may be serious feasibility issues with respect to any amended plan that

purports to satisfy that section as to the Secured Parties' Secured Claims. Ultimately though, if no agreement is reached with respect to the AFIC Insurers' consent to the disposition of the Participation Assets as contemplated by the Participation Agreement, the AFIC Insurers and the other Secured Parties are left to guess as to what will happen to their claims and their collateral.

5. Unfortunately, despite extensive, good-faith negotiations between the AFIC Insurers, Azorra and the Participation Debtors, an agreement through which the AFIC Insurers would consent to the disposition of the Participation Assets in connection with the Participation Agreement or some other alternative arrangement has not yet been reached. As a result, it is self-evident that the Debtors will need to amend the Plan's provisions related to the AFIC Insurers' Claims before moving forward with solicitation. On August 30, 2023, the Debtors represented that they "will be filing a revised Plan and Disclosure Statement," although the Debtors have not extended the relevant deadline to object to any such amended Disclosure Statement and Plan. Instead, the Debtors are forcing the AFIC Insurers—and perhaps others—to file objections that could be mooted by any revised Plan and Disclosure Statement, causing the AFIC Insurers to waste time and resources to file this objection when the parties' efforts would be better spent discussing potential consensual resolutions in the time permitted.

6. As proposed, the Disclosure Statement fails to provide adequate information as required by section 1125 of the Bankruptcy Code. In addition to the lack of information with respect to the treatment of the AFIC Insurers' Class 3b Claims described above, it also fails to: (i) describe and provide a basis for the apparent consolidation of the Debtors' estates for purposes of making distributions to general unsecured creditors, including on account of any unsecured deficiency claims held by the Secured Parties; (ii) provide a liquidation analysis; (iii) appropriately describe the Participation Agreement and the extremely limited scope of Azorra's obligations thereunder with respect to the Participation Assets; or (iv) disclose the material risks associated

with what appears to be the Debtors' intention to pursue confirmation of the Plan on a "per-plan" as opposed to "per-debtor" basis. The lack of information is so fundamental and complete that the AFIC Insurers are unable to propose language to fix it. The Court should not permit the Debtors to expend the estates' resources by pushing forward with solicitation of their half-baked Plan premised on the hope for agreements with the AFIC Insurers that are not certain.

## RELEVANT BACKGROUND

### A. The Participation Aircraft and the Secured Facilities

7. As described in detail in the AFIC Insurers' objection to the Participation Debtors' motion to assume the Participation Agreement dated July 17, 2023 [Dkt. No. 42] (the "Participation Agreement Motion"), certain of the Participation Debtors own and lease, together with all related engines, parts, equipment and records, two Boeing 747-8F freighter aircraft bearing manufacturer's serial numbers 63695 ("MSN 63695") and 63781, ("MSN 63781", and together with MSN 63695, the "Participation Aircraft").

8. To finance their acquisition of the Participation Aircraft, the Participation Debtors entered into secured financing facilities (the "Facilities") with the Finance Parties (as defined in the Participation Agreement). As described in greater detail in the Participation Agreement Motion and Participation Agreement (as defined below), the Facilities were provided by the Finance Parties pursuant to the MSN 63695 Aircraft Financing Documents and the MSN 63781 Aircraft Financing Documents (as defined in the Participation Agreement, and together, the "Financing Documents").

9. As described more fully in the Participation Agreement Motion, the obligations of the Participation Debtors to the Finance Parties under the Financing Documents (the "Secured Obligations") are secured by liens and security interests in certain assets of the Participation Debtors (collectively, the "Collateral") granted to Wells Fargo Trust Company, National

4

Association in its capacity as security trustee under the Financing Documents (the "Security Trustee") for the benefit of the Finance Parties pursuant to the Security Documents (as defined in the Participation Agreement). The Collateral includes the Participation Aircraft and claims under insurances related to the Participation Aircraft, including, without limitation, claims that have been asserted by the Participation Debtors against insurers that have provided coverage in connection with the operation of the Participation Aircraft and that are the subject of pending litigation in the Business and Property Courts of England and Wales following the total loss of the Participation Aircraft in the wake of Russia's invasion of Ukraine and the resulting imposition of sanctions and cancellation of the leasing arrangements.

10. All of the Participation Assets form part of the Collateral. The defined terms "Participation Assets" and "Collateral" are used interchangeably in this Objection. The Finance Parties, acting at the direction of the AFIC Insurers through the Insurer Representative (as defined below), are referred to herein as the "Secured Parties."

11. Debtor Voyager Aviation Holdings, LLC ("VAH") has guaranteed repayment of the Secured Obligations pursuant to: (i) the Guarantee dated as of September 29, 2017 (in respect of MSN 63695); and (ii) the Guarantee dated as of September 15, 2017 (in respect of MSN 63781) (together, the "VAH Guaranty").

12. As of the date hereof, the amount outstanding under the Facilities is not less than $125.7 million.

B. **Non-Payment Insurance Underwritten by the AFIC Insurers**

13. The AFIC Insurers are a group of insurers who have provided non-payment insurance in respect of principal and schedule interest owing to the Secured Parties under the Facilities. Allianz Global Corporate & Specialty SE, UK acts as the insurer representative of the AFIC Insurers (the "Insurer Representative"). As a result, the AFIC Insurers are the true economic

5

interest holders with respect to the claims on account of the Secured Obligations against the Participation Debtors. Further, the Insurer Representative has the right to instruct the other Secured Parties, including the Security Trustee, to exercise all remedies available to the Secured Parties under the Financing Documents, including the Security Documents, with respect to the Secured Obligations, including enforcing against the Collateral.

### C. The Participation Agreement and the Participation Agreement Motion

14. Prior to the Petition Date, each of the Participation Debtors entered into the Participation Agreement. Under the Participation Agreement, the Participation Debtors have agreed to sell to Azorra the Participation Interests in the Participation Assets, each as defined in the Participation Agreement. The Participation Agreement also grants Azorra the option, in its discretion, to "elevate" its purchase of the Participation Interests into a "direct assignment" to it from the Participation Debtors of all of their rights, title and interest in the Participation Assets— i.e. an outright purchase of the Participation Assets. Participation Agreement § 4(a). As recognized by the Participation Debtors, all of the Participation Assets form part of the Collateral securing the Secured Obligations. Participation Agreement Motion ¶ 24. The transfer of the Participation Interests and any subsequent transfer of the Participation Assets to Azorra is conditioned on, among other things, this Court's approval of the relief sought in the Participation Agreement Motion (as defined below) and the entry into, and effectiveness of, an "AFIC Consent Agreement." Participation Agreement §§ 2(b)(i)(a)-(b).

15. Following the Petition Date, the Participation Debtors filed the Participation Agreement Motion seeking approval of the transactions contemplated by the Participation Agreement. The AFIC Insurers are filing their objection to the Participation Agreement Motion (the "Participation Agreement Objection") contemporaneously herewith, together with a related motion for adequate protection of their interests in the Participation Assets.

6

**D. The Plan and Disclosure Statement**

16. On July 27, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

17. On August 4, 2023, the Debtors filed their *Joint Chapter 11 Plan of Voyager Aviation Holdings, LLC, et al.* [Dkt. No. 50] (the "Plan") and the Disclosure Statement.

18. In the Plan and the Disclosure Statement, the Voyager Debtors do not explain in any meaningful detail the proposed treatment under section 1129(b) of the Bankruptcy Code for the Secured Parties if the AFIC Insurers do not execute an AFIC Consent Agreement—which is defined as a "Participation Consent" in the Plan. The claims arising from the Secured Obligations are classified in "Class 3b—Aircraft Financing Facility Claims against Participation Debtors." Plan § II.B.1. Class 3b claims are proposed to receive the following treatment under the Plan:

> **Treatment**. In the event a holder of an Allowed Class 3b Claim has executed a Participation Consent (or otherwise agreed to a proposed treatment with the Debtors, but subject to the terms of the Participation Agreement) each such holder shall receive the treatment provided in such Participation Consent or agreement. *In the event a holder of an Allowed Class 3b Claim has not executed a Participation Consent, and has not otherwise agreed to a proposed treatment with the Debtors, then such holder shall receive treatment that satisfies section 1129(b) of the Bankruptcy Code.*

Plan § II.C.4.b (emphasis added).

19. The claims arising from the VAH Guaranty appear to be classified in "Class 6c—General Unsecured Claims against Other Debtors." *Id*. § II.B.1. Further, while the classification of any unsecured deficiency claims that the Secured Parties may have against the Participation Debtors is not entirely clear, such claims appear to be classified in

7

"Class 6b—General Unsecured Claims against Participation Debtors." *Id*. Class 6b and 6C are proposed to receive the following treatment under the Plan:

> Solely to the extent that there are Remaining Distributable Assets available after satisfaction of all senior Claims in accordance with the Plan, then, at such times that there are Remaining Distributable Assets for distribution to Claims in [Class 6b] [Class 6c], as determined by the Plan Administrator, holders of Claims in [Class 6b] [Class 6c] shall receive, subject to Section II.F of the Plan, a distribution from Remaining Distributable Assets.

Plan §§ II.C.8.b; II.C.8.c.

20.     The Plan defines "Remaining Distributable Assets" as:

> the sum of (i) Cash on hand, (ii) the Azorra Transaction Proceeds, and (iii) the proceeds of liquidation of the Other Assets, less the amount of cash necessary to (x) fund (1) the Winddown Amount, (2) the Convenience/Go-Forward Trade Claims Recovery Pool, and (3) the Professional Fee Escrow and (y) satisfy the following Claims to the extent allowed and required to be paid in Cash under the Plan: all Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Aircraft Financing Facility Claims of the Aircraft Selling Entities, Other Secured Claims, the General Unsecured Claims against Aircraft Selling Entities.

Plan § I.A. (definition of "Remaining Distributable Assets").

21.     The Debtors have not filed the exhibit to the Disclosure Statement containing their liquidation analysis. Disclosure Statement; Exhibit F (Liquidation Analysis—*Forthcoming*).

## **OBJECTION**

**I.   The Court Should Not Approve the Disclosure Statement Because It Fails to Provide Adequate Information**

**A.   Disclosure is Inadequate With Respect to the Treatment of Class 3B Claims**

22.     The Disclosure Statement fails to provide the complete and candid information stakeholders need to evaluate the Plan's merits (or lack thereof). Because creditors and the Court alike must rely on information in a disclosure statement, the "importance of full disclosure . . . cannot [be] overemphasize[d]." *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.

8

1988)); *see also In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985) ("The preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor. It is relied on by both the creditors of the debtor before they vote on the plan of reorganization, and by the bankruptcy court before approving it.") (citation omitted). Because the Disclosure Statement fails to meet this standard, it cannot be approved.

23. Particularly essential to be included in any disclosure statement is sufficient information for a creditor reviewing the disclosure statement to answer its most important question—what will I receive? *See In re McLean Indus., Inc.*, 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987) ("If there is anything that falls under the rubric of 'adequate information' required by § 1125(a) of the Bankruptcy Code to be contained in a disclosure statement, it is an approximation of the dividend payable to each unsecured creditor. Indeed, this Court has summarily rejected from the bench disclosure statements failing to contain that information."); *see also, In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

24. As it relates to the Secured Parties and the Secured Obligations, the Plan is premised on obtaining the AFIC Insurers' consent to the Participation Debtors' disposition of the Participation Interests and Participation Assets to Azorra as contemplated in the Participation Agreement. For the reasons set forth in the Participation Agreement Objection, the AFIC Insurers do not consent. As such, a key pillar of the Plan, which the Debtors clearly envision as proceeding on a fully consensual basis, is removed and neither the Plan nor the Disclosure Statement provides ***any*** information, let alone adequate information, for the AFIC Insurers or the other Secured Parties to assess the proposed treatment of Class 3c Claims other than that the Debtors intend to provide treatment that complies with section 1129(b) of the Bankruptcy Code. Even if that disclosure were

sufficient for the purpose of providing parties adequate information to assess the Plan and what they will receive under it, which it is not, the Disclosure Statement is devoid of basic information regarding the estate resources that would be available to the Debtors to proceed with a non-consensual plan in circumstances where the parties fail to enter into an AFIC Consent Agreement and the Participation Agreement terminates by its terms.

25. With respect to sources of consideration for distributions to the Secured Parties, the Disclosure Statement simply states that "[d]istributions to holders of Allowed Claims in Class 3b shall be made in accordance with the terms of the Participation Agreement and, as applicable, the Participation consents." Disclosure Statement § B(4). There is no discussion at all of what the sources of consideration would be for distributions to the Secured Parties in the event the Participation Agreement framework on which the Plan is currently premised falls away and the Debtors are required to fund any of the acceptable treatments of secured creditors contemplated under section 1129(b) of the Bankruptcy Code. This deficiency is particularly acute in circumstances where the Disclosure Statement *does* disclose that the Debtors have no resources available to them for preserving the Participation Assets or pursuing recovery on such assets. Disclosure Statement III.G ("With insufficient means to satisfy the obligations under the applicable aircraft financing or the litigation to recover the insurance proceeds, the Company agreed to enter into the Participation Agreement . . . . Absent the Participation Agreement, there is no viable option to obtain any recovery for the Company and its creditors on account of the Participation Assets.").

26. Given that the Debtors contemplated proceeding with the Plan on a fully consensual basis, the gross inadequacy of the Disclosure Statement and the Plan as it relates to the treatment of the Secured Parties claims and interests is perhaps understandable. But in light of the Debtors' failure to obtain the AFIC Insurers' consent to the transactions contemplated by the Participation

10

Agreement, the Disclosure Statement cannot be approved as drafted as it fails to disclose information essential to the AFIC Insurers and the Secured Parties for the purpose of assessing the Plan and what they stand to receive under it.

**B.    Disclosure is Inadequate With Respect to the Treatment of Class 6b and 6c Claims**

27.    In addition to Class 3b Claims, the Secured Parties may have unsecured deficiency claims against the Participation Debtors that appear to be included in Class 6c ("General Unsecured Claims against Participation Debtors") and unsecured claims against VAH arising from VAH's guarantee of the Secured Obligations pursuant to the VAH Guaranty, which claims appear to be included in Class 6b ("General Unsecured Claims against Other Debtors"). The Disclosure Statement provides inadequate disclosure with respect to the treatment of such claims.

28.    <u>First</u>, the Disclosure Statement does not disclose the estimated amount of claims in Classes 6b or 6c[2] or provide any explanation at all with respect to the estimated 0% recoveries for those classes.

29.    <u>Second</u>, the Disclosure Statement provides insufficient information for creditors to assess whether the treatment of Classes 6b and 6c is legally permissible. Specifically, the Plan's class treatment provisions and related definitions in relation to Classes 6b and 6c fail to distinguish between claims asserted against individual Debtors *and* provide for the wholesale subordination of a collectivized pool of General Unsecured Claims to a collectivized pool of other enumerated Claims, including "***all*** Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Aircraft Financing Facility Claims of the Aircraft Selling Entities, Other Secured Claims, [and] the General Unsecured Claims Against Aircraft Selling Entities." Plan § I.A. (definition of

---

[2]    Given their overriding assumption that the AFIC Insurers will consent to the Participation Agreement, it may be that the Debtors also assume that in connection with such consent the AFIC Insurers will agree to waive any deficiency claim or guaranty claim. However, in the absence of an agreement that contains a waiver, which the Debtors do not have at this time, those claims must be included in the class for purposes of projecting recoveries.

"Remaining Distributable Assets") (emphasis added). The Plan thus appears to provide for the subordination of the Secured Parties' unsecured deficiency claims against the Participation Debtors to, among other things, claims against the Aircraft Selling Entities.

30.     The Disclosure Statement is silent with respect to the rationale or legal justification for collectivizing Debtor assets for distribution purposes or for subordinating any unsecured deficiency claims of the Secured Parties against the Participation Debtors or unsecured claims against VAH under the VAH Guaranty. The Debtors do not propose to consolidate their estates for any purpose under the Plan and to the extent their proposed treatment of claims in Classes 6b and 6c operates as an effective consolidation, the Debtors should provide the appropriate disclosures to that effect in the Disclosure Statement.[3]

### C. The Debtors Should Provide Adequate Disclosure of the "Per-Plan" Approach Embodied in the Plan

31.     Classification of Claims under the Plan is premised on combining votes of creditors of each of the Debtors, or in the case of the Classes of Claims against the Participation Debtors, a subset of Debtors, across consolidated classes. Plan § II.A.b. The Debtors do not discuss in the Disclosure Statement the substantial risks associated with that approach. Section 1129(a)(10) of the Bankruptcy Code requires that there be at least one impaired class of creditors (exclusive of insiders) under a chapter 11 plan that votes to accept the plan. In multi-debtor cases, courts have split as to whether section 1129(a)(10) requires an accepting impaired class for each debtor (i.e., the "per-debtor" approach) or whether the requirements of that section may be satisfied by identifying an impaired accepting class across all debtors (i.e., the "per-plan" approach). *See e.g.*, *In re NESV Ice, LLC*, 2023 WL 2278603 at *16-19 (Bankr. D. Mass. Feb. 28, 2023) (collecting

---

[3]     For the avoidance of doubt, the AFIC Insurers reserve the right to object to confirmation of the Plan to the extent it proposes an impermissible consolidation of the Debtors' estates for any purpose.

cases). Most courts that have shown a willingness to accept the "per-plan" approach have done so only in circumstances where the chapter 11 plan at issue involves some degree of consolidation. *Id.* (holding that the court would adopt the "per-plan" approach "with some reservation and subject to the evidence presented" after concluding that section 1129(a)(10) should be interpreted to "permit confirmation of a joint plan of reorganization where at least one class of impaired creditors of one debtor has accepted the plan under discrete circumstances where consolidation is proposed as a good faith means of implementing the plan."); *In re 85 Flatbush RHO Mezz LLC*, 22-CV-6233 (CS), 2022 WL 11820407, at *11 (S.D.N.Y. Oct. 20, 2022) (adopting the "per-plan" approach without regard to consolidation considerations, but observing that even if such considerations were gating issues the debtors in the cases were integrated to a sufficient degree to justify adopting the "per-plan" approach).

32. While there is support in this district for the "per-plan" approach, there is no binding authority that mandates acceptance of the "per-plan" approach and the Court is free to determine for itself whether such an approach should be permitted in the context of these chapter 11 cases—or at all. Particularly in circumstances where the Debtors do not confirm that they will seek to consolidate their estates under the Plan or provide any justification for substantive consolidation or any other form of consolidation in connection with plan voting or distributions, there is at least substantial doubt that the Plan is confirmable to the extent that the Debtors seek to use collectivized creditor classes to satisfy the requirements of section 1129(a)(10).

33. The AFIC Insurers reserve the right to object to any effort of the Debtors to confirm the Plan on the basis of a "per-plan" approach. In the meantime, however, the Disclosure Statement should not be approved absent inclusion of appropriate disclosures in relation to the risks of proceeding with solicitation on the basis of multi-debtor creditor classes.

**D.    The Debtors' Description of the Participation Agreement is Flawed and Inadequate**

34.     As discussed in detail in the Assumption Objection, by the Participation Agreement, the Participation Debtors propose to abdicate their responsibilities with respect to the preservation of the Participation Assets to Azorra without obtaining a corresponding commitment from Azorra to provide *any* amount of funding in connection with associated collateral recovery efforts. The Disclosure Statement fails to adequately disclose the limited scope of Azorra's obligations under the Participation Agreement or the $2.5 million penalty payable to Azorra by the Participation Debtors under the terms of the Participation Agreement if it terminates by its terms, including as a result of a failure to obtain—as of September 15, 2023—the AFIC Insurers' consent to the transactions contemplated by the Participation Agreement, and any of the Participation Assets are later disposed of to any other party other than Azorra. Participation Agreement § 21(e). The Debtors should be required to provide additional disclosures to accurately apprise stakeholders of the nature of Azorra's obligations under the Participation Agreement and the material negative impact to the Participation Debtors' estates that would result from any termination of the Participation Agreement and any subsequent disposition of the Participation Assets as a result of the $2.5 million penalty, particularly where, as here, such termination appears imminent without the consent of the AFIC Insurers before September 15, 2023.

**E.    The Debtors Have Not Provided a Liquidation Analysis**

35.     As of the date hereof, the Debtors have not filed the Liquidation Analysis to be attached to the Disclosure Statement. Disclosure Statement § VII.2. The Disclosure Statement should not be approved unless the Liquidation Analysis is provided so as to ensure that creditors have the information they require to assess whether the Plan satisfies the "best interests of creditors" requirement set forth in section 1129(a)(7) of the Bankruptcy Code. However, on the

assumption that the Debtors intend to file the Liquidation Analysis prior to the hearing on the Motion parties in interest should be afforded a reasonable period of time to review the Liquidation Analysis and assess whether it is sufficient for the purposes of providing adequate disclosure.

36. The threshold adequacy of a liquidation analysis and the reasonableness of the assumptions on which it is premised are issues to be addressed by a court in considering whether a disclosure statement contains adequate information as required under the Bankruptcy Code. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 292-300 (Bankr. S.D.N.Y. 1990) (finding inadequate a disclosure statement that ignored recent bids for the debtors' business and its viability as a going concern even though the court believed the best interests test was satisfied for confirmation). The AFIC Insurers reserve the right to request an appropriate adjournment of the hearing on the Motion to review, and if necessary, supplement this Objection in respect of, the Liquidation Analysis and the assumptions on which it is based.

## RESERVATION OF RIGHTS

37. This Objection is submitted without prejudice to, and with a full reservation of, the AFIC Insurers' rights to object to confirmation of the Plan on any basis, or to supplement this Objection in writing or at the hearing thereon including, without limitation, in the event the Debtors amend or otherwise modify the Disclosure Statement and/or the Plan.

*[Intentionally left blank]*

Pg 19 of 19

**CONCLUSION**

**WHEREFORE,** for the reasons set forth herein, the AFIC Insurers respectfully request that the Court deny the relief requested in the Motion.

Dated: September 7, 2023
      New York, New York

    *Daniel J. Guyder*
    Daniel J. Guyder
    Christopher R. Newcomb
    Joseph Badtke-Berkow
    Jacob R. Herz

    **ALLEN & OVERY LLP**
    1221 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 610-6300
    Facsimile: (212) 610 6399
    daniel.guyder@allenovery.com
    chris.newcomb@allenovery.com
    joseph.badtke-berkow@allenovery.com
    jacob.herz@allenovery.com

    *Attorneys for Aircraft Finance*
    *Insurance Consortium Insurers*